KEITH A. PITT, OSB No. 973725
keith@slindenelson.com
NICHOLAS J. SLINDE, OSB No. 003900
nick@slindenelson.com
PHIL J. NELSON, OSB No. 013650
phil@slindenelson.com
SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
Telephone: (503) 417-7777
Fax: (503) 417-4250
        *Of Attorneys for Defendant Walker Place, LLC*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROSS DRESS FOR LESS, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>MAKARIOS-OREGON, LLC, an Oregon limited liability company; and WALKER PLACE, LLC, an Oregon limited liability company,<br><br>                    Defendants, | Case No. 3:14-cv-01971<br><br>**WALKER PLACE LLC'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**<br><br>**(ORAL ARGUMENT REQUESTED)** |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1, Walker Place, LLC hereby certifies that it has made a good faith attempt to confer with Plaintiff's counsel, and have been unable to resolve the matters in dispute.

**PAGE 1 – WALKER PLACE LLC'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

## MOTIONS

COMES NOW Defendant Walker Place, LLC ("Walker Place"), by and through its attorneys, Slinde Nelson Stanford, and, pursuant to FRCP 56, hereby moves the Court for partial summary judgment, in its favor, and against Plaintiff Ross Dress for Less, Inc.'s ("Plaintiff" or "Ross") Complaint for Declaratory Relief and in connection with Plaintiff's Affirmative Defenses to Walker Place's First, Second, and Third Counterclaims on the following issues:

(1) Walker Place is entitled to partial summary judgment on its First, Second, and Third Counterclaims (for declaratory relief, breach of contract, and statutory waste) pertaining to Plaintiff's removal of all historical "retail/mercantile" occupancy from the basement of the Failing Building, and Plaintiff's anticipatory breach and refusal to address and restore the same at the conclusion of its tenancy.[1]

(2) Walker Place is entitled to partial summary judgment on each of Plaintiff's affirmative defenses to Walker Place's First, Second, and Third Counterclaims as follows:

(a) Walker Place is entitled to partial summary judgment on Plaintiff's First Affirmative Defense (Failure to State a Claim) as it is "not a true" affirmative defense;

(b) Walker Place is entitled to partial summary judgment on Plaintiff's Second Affirmative Defense (Waiver) as there is no genuine issue of material fact regarding the elements and application of that

---

[1] This particular Motion is directed solely to the issue of whether "waste" and violation of Plaintiff's contractual "surrender" obligations have occurred regarding this discrete issue. The related issue of Walker Place's "damages" resulting therefrom, including the issues of treble damages under ORS 105.805, is question for a jury to determine.

defense under Oregon law, and Walker Place is entitled to judgment as a matter of law.

(c) Walker Place is entitled to partial summary judgment on Plaintiff's Third Affirmative Defense (Estoppel) as there is no genuine issue of material fact regarding the elements and application of that defense under Oregon law, and Walker Place is entitled to judgment as a matter of law;

(d) Walker Place is entitled to partial summary judgment on Plaintiff's Fourth Affirmative Defense (Unclean Hands) as there is no genuine issue of material fact regarding the elements and application of that defense under Oregon law, and Walker Place is entitled to judgment as a matter of law;

(e) Walker Place is entitled to partial summary judgment on Plaintiff's Fifth Affirmative Defense (Laches) as there is no genuine issue of material fact regarding the elements and application of that defense under Oregon law, and Walker Place is entitled to judgment as a matter of law;

(f) Walker Place is entitled to partial summary judgment on Plaintiff's Sixth Affirmative Defense (Breach by Walker Place) as there is no genuine issue of material fact regarding a "material breach" of contract by Walker Place under Oregon law, and Walker Place is entitled to judgment as a matter of law;

(g) Walker Place is entitled to partial summary judgment on Plaintiff's Seventh Affirmative Defense (Statute of Limitations) as there is no genuine issue of material fact that any of Plaintiff's "separation" or

"surrender" obligations under the Failing Lease or its statutory claim for "waste," as applied to the removed "retail/mercantile" occupancy in the basement of the Failing Building, are time barred under ORS 12.080, and Walker Place is entitled to judgment as a matter of law.

(3) Walker Place joins in Makarios-Oregon, LLC's ("Makarios") "Motion No. 1" insofar as Plaintiff's declaratory relief claim must be denied, as a matter of law, because Plaintiff's separation and surrender plans are inadequate and incomplete, particularly with regard to Plaintiff's obligation under the "Severance" provisions of the Failing Lease to render the Failing Building as "physically separate" and "entirely independent and self-sufficient" as required therein.

These Motions are made in good faith, not for purpose of delay, and in the opinion of counsel is well founded in law. Walker Place relies upon FRCP 56, the declaration(s) and exhibits supplied herein, and the attached Memorandum of Law, all incorporated by this reference.

DATED this 1st day of February 2016.

SLINDE NELSON STANFORD

By:____/ s / Keith A. Pitt_____
      Keith A. Pitt, OSB No. 973725
      *Of Attorneys for Walker Place, LLC*

SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF LAW ...................................................................................... 1

    Introduction..................................................................................................... 1

        Plaintiff's Strip and Removal of Historical Occupancy
        from the Failing Building................................................................... 1

    Argument ......................................................................................................... 4

      I.  Standard of Review. .......................................................................... 4

      II.  Plaintiff's Removal of All "Retail/Mercantile" Occupancy in the
          Failing Building Basement Constitutes Statutory Waste and Violates
          the Surrender Obligations of the Failing Lease as a Matter of Law. ..................... 5

          A.  Plaintiff's Surrender Obligations/Violations Under The Failing Lease. .......... 5

          B.  Plaintiff's Statutory Obligations/Liability Under ORS 105.805...................... 7

      III.  Walker Place Is Entitled To Partial Summary Judgment Against Plaintiff's
          Affirmative Defenses. ....................................................................... 10

          A.  First Affirmative Defense (Failure to State a Claim)...................................... 11

          B.  Second Affirmative Defense (Waiver). ......................................................... 11

          C.  Third Affirmative Defense (Estoppel). ......................................................... 13

          D.  Fourth Affirmative Defense (Unclean Hands)................................................ 14

          E.  Fifth Affirmative Defense (Laches)............................................................... 15

          F.  Sixth Affirmative Defense (Breach by Walker Place).................................... 15

          G.  Seventh Affirmative Defense (Statute of Limitations). .................................. 16

              i.  ORS 12.080(1). .............................................................................. 17

              ii.  ORS 12.080(3). .............................................................................. 18

      IV.  Walker Place Is Entitled to Partial Summary Judgment Regarding The Relief
          Sought by Makarios-Oregon, LLC In Its Motion No. 1 Regarding the "Severance"
          Obligations of Plaintiff Under The Failing Lease and Richmond Lease............. 18

    Conclusion ...................................................................................................... 21

    CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(B)(2) ...................................... 22

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)................................................ 4

*Ball v. Day,*
57 Or App 384, 644 P.2d 649 (1982)......................................................................... 9

*Bank of Eastern Oregon v. Griffith,*
101 Or App 528, 792 P.2d 1210 (1990)..................................................................... 12

*Bennett v. Farmers Ins. Co.,*
332 Or. 138, 26 P.3d 785 (2001) ............................................................................... 11

*Bisio v. Madenwald,*
33 Or App 325, 576 P.2d 801, *rev. den.* 283 Or 1 (1978) ........................................ 16

*Brown v. Portland Sch. Dist. No. 1,*
291 Or 77, 628 P.2d 1183 (1981) .............................................................................. 11

*Celotex Corp. v. Caltrett,*
477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).............................................. 10

*Communication Management Services, LLC v. Qwest Corp.,*
67 F.Supp.3d 1159 (D.Or. 2014) ............................................................................... 15

*Crain v. Siegel,*
151 Or App 567, 950 P.2d 382 (1997)....................................................................... 11

*Day v. Advanced M & D Sales, Inc.,*
336 Or 511 (2004)................................................................................................. 9, 13

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford,*
868 F.Supp.2d 1042 (D.Or. 2011) ............................................................................. 14

*Deering v. Lassen Cmty. Coll. Dist.,*
No. 2:07–CV1521–JAM–DAD, 2011 WL 202797, at *2 (E.D.Cal., Jan. 20, 2011)................... 4

*Del Monte Fresh Produce N.A., Inc. v. H.J. Heinz Co.,*
2008 WL 607415, *1 (D.Or. 2008)...................................................................... 14, 15

*Garcia v. Lupton,*
2016 WL 107955. *5 (D.Or. 2006)............................................................................ 16

*Genesis Indem. Ins. Co. v. Deschutes Cnty.,*
194 Or App 446, 95 P.3d 748 (2004)........................................................................ 11

*Goodwin v. Kingsmen Plastering, Inc.,*
267 Or App 506, 340 P.3d 169 (2014)....................................................................... 18

*Hamilton v. Silven, Schmeits & Vaughan, P.C.,*
2011 WL 6887132, *6 (D.Or. 2011).......................................................................... 13

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

## Table of Authorities (con't.)

**Cases**

*Harper v. Wallingford*,
  877 F.2d 728 (9th Cir. 1989) ......................................................................... 4

*In re Emerson Street, LLC*,
  2012 WL 6174995, *2 (Bnkr. Or. 2012) ...................................................... 8

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ......................................................................... 4

*In re Stout's Estate*,
  151 Or 411, 50 P.2d 768 (1935) ............................................................ 7, 8, 9

*Ionian Corp. v. Country Mut. Ins. Corp.*,
  88 F.Supp.3d 1187 (D.Or. 2015) ................................................................ 12

*James v. Recontrust Co.*,
  2011 WL 3841558, *4 (D.Or. 2011)........................................................... 14

*Johnson v. Northwest Acceptance Corp.*,
  259 Or 1, 485 P.2d 12 (1971) ....................................................................... 9

*Kantor v. Boise Cascade Corp.*,
  75 Or App 698, 708 P.2d 356 (1985)........................................................... 17

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ....................................................................... 4

*McKinley v. Weidner*,
  73 Or App 396, 698 P.2d 983 (1985)........................................................... 14

*Meunier v. Northwestern Mut. Life Ins. Co.*,
  51 F.Supp.3d 1023 (D.Or. 2014) ................................................................ 17

*Miller v. Glenn Miller Prod., Inc.*,
  454 F.3d 975 (9th Cir. 2006) ......................................................................... 4

*Mountain High Homeowners Ass'n v. J.L. Ward Co.*,
  228 Or App 424, 440, 209 P.3d 347 (2009)................................................... 8

*Reeder v. Kay*,
  282 Or 191, 577 P.2d 925 (1978) ............................................................... 16

*Rise v. Steckel*,
  59 Or App 675, 652 P.2d 364, 369 (1982).................................................. 14

*Rivera v. Philip Morris, Inc.*,
  78395 F.3d 1142 (9th Cir. 2005) ................................................................... 4

*Smith v. Martin*,
  94 Or 132, 185 P. 236 (1919) ..................................................................... 11

SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

## Table of Authorities (con't.)

**Cases**

*Stanley v. Mueller,*
   222 Or 194, 350 P.2d 880, 887 (1960) ................................................................. 12

*S-Tronix v. Submedia, LLC,*
   2009 WL 152521, *3 (D.Or. 2009)...................................................................... 6

*Tri-County Metropolitan Transit Dist. v. Time Warner Telecom of Oregon, LLC,*
   2008 WL 4572519, *6 (D.Or. 2008)................................................................. 12

*Villiarimo v. Aloha Island Air, Inc.,*
   281 F.3d 1054 (9th Cir. 2002) .......................................................................... 4

*Vollertsen v. Lamb,*
   302 Or 489, 732 P.2d 486 (1987) ..................................................................... 5

*Voltage Pictures, LLC v. Blake,*
   2015 WL 9272880, *6 (D.Or. 2015).......................................................... 10, 11

*Washington Mut. Inc. v. United States,*
   636 F.3d 1207 (9th Cir. 2011) .......................................................................... 4

*Wasserburger v. American Scientific Chemical, Inc.,*
   267 Or 77, 514 P.2d 1097 (1973) ..................................................................... 16

*Welsh v. Case,*
   180 Or App 370, 43 P.3d 445, 454 (2002)......................................................... 14

*Whistler v. Hyder,*
   129 Or App 344 (1994)................................................................................. 8, 9

*Zivkovic v. S. Cal. Edison Co.,*
   302 F.3d 1080 (9th Cir. 2002) .......................................................................... 11

*Zurcher v. Booth,*
   80 Or 335, 157 P. 147 (1916) .......................................................................... 17

**Statutes**

Oregon Revised Statute
   § 12.080................................................................................................ 16, 17
   § 12.080(1)................................................................................................ i, 17
   § 12.080(3)........................................................................................ i, 17, 18
   § 42.300.................................................................................................... 20
   § 79.4060.................................................................................................. 12
   § 105.805............................................................................................. passim

**Rule**

Federal Rules of Civil Procedure
   § 56(a) ..................................................................................................... 4

**iv – Table of Contents and Authorities**

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

## MEMORANDUM OF LAW

### Introduction

In 1996 Plaintiff acquired the Failing Lease and Richmond Lease out of the bankruptcy involving JJ Newberry Company ("Newberry").  In acquiring those leases, Plaintiff likewise acquired a unique set of benefits and burdens regarding these two buildings.  The Benefit: a substantially discounted, below market lease rate for the entire 20 years of the Plaintiff's occupancy, which discount had likewise existed during years Newberry held the leases.  The Burden:  At the conclusion of these leases, Plaintiff assumed an affirmative obligation to render the two buildings "entirely independent and self-sufficient" from one another.

Plaintiff, having now consumed all available *benefits* from these leases, now refuses to perform the corresponding *burdens*, retreating instead into a series of self-serving arguments and unprincipled readings of the applicable lease provisions.

As detailed below, Walker Place's motions relate to discrete issues pertaining to (1) Plaintiff's "separation" obligations to fully and "physically separate" the Failing Building and Richmond Building,[2] and (2) Plaintiff's "surrender" obligations to address/restore the historical occupancy within the basement of the Failing Building, which occupancy Plaintiff affirmatively stripped and removed in connection with its 1996 remodel of the Failing Building.

The pertinent, undisputed facts related to Plaintiff's "surrender" obligations regarding the basement of the Failing Building follow.

### Plaintiff's Strip and Removal of Historical Occupancy from the Failing Building.

In 1996, Plaintiff spent over $2 million in renovations to the space to adapt it to its needs. Prior to that renovation, the Failing Building included an open "grand staircase" leading from the

---

[2]     As to Plaintiff's "separation" obligations, Walker Place incorporates the corresponding facts/argument from the Makarios motion for partial summary judgment, and which Walker Place hereby joins and supplements in Section IV below.

**Page 1 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

main retail floor of the Failing Building down to the basement retail floor.[3]  Further, prior to that renovation in 1996, the Failing Building provided "retail/mercantile" occupancy in the basement, which use of that space was likewise available to Plaintiff.[4]

Notwithstanding, apparently undesirable to Plaintiff, it filled in the "grand staircase" with new floor framing, and undertook other alterations, abandoning the previous "mercantile/retail" use of that space.[5] In addition – and more importantly – when Plaintiff submitted its plans to the City of Portland in 1996, Plaintiff *affirmatively* stripped the *entire* Failing Building basement of its historical occupancy, noting:

> "VACANT NO OCCUPANCY – NO STORAGE SEPARATE PERMIT REQUIRED FOR OCCUPANCY."[6]

In electing to strip *all* occupancy from the Failing Building basement, Plaintiff *never* considered what effect that decision may have on *future* use of that space.[7] Nor did Plaintiff ever seek approval from or alert the ownership of the Failing Building of Plaintiff's self-serving election to strip all such occupancy prior to commencing its "remodel" of the Failing Building basement.

Further, as a *direct* result of that 1996 election – *i.e., Plaintiff's* election to strip *all* occupancy from the basement in the Failing Building – substantial seismic upgrades are now required to restore *historical* retail/mercantile occupancy of the basement.[8]  Stated in concrete numbers, *prior* to Plaintiff's election, the occupancy of the Failing Building basement included a "retail/mercantile" use, and allowed a total of 317 occupants.  *Today*, by stark contrast, pursuant

---

[3]     Declaration of Keith A. Pitt, "Pitt Decl.," Ex. A, Pg. 7 (Haskins Dep., Pg. 142:10-18).

[4]     *Id.*, Pgs. 7 and 14 (Haskins Dep., Pgs. 142:20-25 and 151:6-13).

[5]     Pitt Decl., Ex. B – Ross 1996 Construction Drawings, sheet D1.0, D1.1, A1.0, A1.1, S1.

[6]     *Id.* at Sheet A1.0.

[7]     Pitt Decl., Ex. A, Pgs. 14-17 (Haskins Dep., Pgs. 151-154).

[8]     Pitt Decl., Ex. C, Pgs. 7 and 8 (Waterleaf Reports – Memo and Seismic Upgrade Costs).

**Page 2 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

to the 2004 City of Portland seismic code, the *allowable* "use" of the Failing Building basement has been reduced to "1" occupant, effectively rendering it useless.[9]

Throughout this litigation, Plaintiff is incredulous that it should even care, outside of its *own* desired use of the building, whether the *historical* "retail/mercantile" occupancy should ever be reestablished in the basement of the Failing Building.[10]  Indeed, during the recent deposition of Plaintiff's expert Brian Bowles – the architect who submitted Plaintiff's October 2015 "plans" to the City of Portland regarding this matter – underscored that Plaintiff has no intention whatsoever to remedy/address this issue:

> Q:  BY MR. PITT: First of all, the plans -- that's a good point. ***The plans don't, in any way, shape, or form, begin to try to address the occupancy issues in the Failing Building or Richmond Building basements*** –
>
> MS. REICHMUTH: Objection.
>
> Q:  BY MR. PITT: -- fair?
>
> MS. REICHMUTH: Vague and ambiguous.
>
> THE WITNESS: Correct.[11]

The undisputed facts are simple and straightforward. Plaintiff's intentions and refusal to take responsibility regarding this matter are likewise clear and unambiguous.

As detailed below, Walker Place's present motions are narrow/targeted to the discrete issues over which there is no genuine issue of material fact.  For the reasons detailed below, Walker Place is entitled to partial summary judgment on these discrete issues.

///

---

[9]    *Id.*

[10]    Pitt Decl., Ex. D, Pgs. 3-16 (McGillis Dep., Pgs. 88-101).

[11]    Pitt Decl., Ex. E, Pg. 7 (Bowles Dep, 239:6-12) (emphasis supplied).  On that score, Plaintiff has not even bothered to inquire with the City of Portland regarding the substantial "seismic" upgrades that are now *required* to restore the historical occupancy to the basement of the Failing Building. (Pitt Decl., Ex. E, Pg. 8 (Bowles Dep, 240:1-14)).

**Page 3 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

## Argument

### I.    <u>Standard of Review.</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] In response to a motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.[13] "This burden is not a light one.... The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."[14] A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[15] A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment."[16]

When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."[17] The substantive law governing a claim or a defense determines whether a fact is material.[18] Finally, if the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.[19]

---

[12]    *Washington Mut. Inc. v. United States,* 636 F.3d 1207, 1216 (9th Cir. 2011); Fed.R.Civ.P. 56(a).

[13]    *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir. 2005).

[14]    *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010).

[15]    *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))

[16]    *Deering v. Lassen Cmty. Coll. Dist., No. 2:07–CV1521–JAM–DAD,* 2011 WL 202797, at *2 (E.D.Cal., Jan. 20, 2011) (*citing Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir. 1989))

[17]    *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).

[18]    *Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 987 (9th Cir. 2006).

[19]    *Id.*

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

II.    **Plaintiff's Removal of All "Retail/Mercantile" Occupancy in the Failing Building Basement Constitutes Statutory Waste and Violates the Surrender Obligations of the Failing Lease as a Matter of Law.**

As detailed below, Plaintiff's removal of all "retail/mercantile" occupancy from the Failing Building basement violates both the express terms of the Failing Lease, as amended, as well as ORS 105.805.  Although the analysis overlaps, the contractual and statutory basis for liability is addressed separately below.[20]

A. **Plaintiff's Surrender Obligations/Violations Under The Failing Lease.**

This discrete issue – and Plaintiff's associated "surrender" obligations herein – are expressly governed by two documents: (i) The 1996 Sixth Amendment to the Failing Lease, and (ii) the 1956 Amended and Restated Failing Lease, each of which affirmatively places the obligation – and liability – on Plaintiff to address and restore the "retail/mercantile" occupancy to the Failing Building basement.

The Sixth Amendment to the Failing Lease states, in relevant part:

> "3.    *** Lessee shall have the right to remodel the leased premises and to make other alterations in the leased premises provided that such work is done pursuant to the plans of a competent architect and after said plans have been approved in writing by Lessor.  Lessor hereby covenants to not unreasonably withhold or delay the granting of consent to such plans.  ***In altering or remodeling the leased premises, Lessee shall not injure or change the general structural character of the leased premises or the building of which the premises are a part*** and all work shall be done in full compliance with all federal, state and municipal laws and regulations and shall not result in any increase in the fire insurance rating of the building of which the leased premises are a part. Lessee agrees that ***it will bear any responsibility*** for costs and expenses associated with ***any modifications to the building*** which, ***as a result of Lessee's work or other activities in the building,*** may be required by federal, state or local laws including but not limited to the American with Disabilities Act, ***seismic laws,*** fire and life safety laws, environmental or hazardous materials laws and regulation.
>
> 4.    ***Except as hereby modified, the Lease shall remain in full force and effect.***"[21]

---

[20]    *Vollertsen v. Lamb,* 302 Or 489, 497, 732 P.2d 486 (1987) (Holding property owner may maintain a claim for "waste" against tenant under both a lease agreement and ORS 105.805)

[21]    Pitt Decl., Ex. F – 1996 Sixth Amendment, Pg. 3, Paragraph 3 (emphasis supplied).

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

Under the <u>Lessee's Covenants</u> of the 1956 Failing Lease, Plaintiff's "surrender" obligations are as follows:

> "Lessee covenants and agrees:   *** (f) That it will ***at the expiration of the term hereof***, or at the earlier termination of this lease ***<u>surrender the premises to the Lessors</u>*** or those having there estate therein ***<u>in the same condition as that which the Lessee is, by the terms of this lease, obligated to put the premises</u>***, reasonable use and wear thereof, and damage due to fire, excepted. ***."[22]

The "same condition as that which the Lessee [Ross] is, by the terms of the lease, obligated to put the premises," expressly *includes* the following:

> "(c) That it will during the term hereof ***at its sole cost and expense*** keep the leased premises in ***<u>good condition and repair</u>***…. *** (h) ***<u>Not to commit or suffer any strip or waste</u>*** of the leased premises…"[23]

Here, the language excerpted from both the 1996 Sixth Amendment and the 1956 Failing Lease imposes affirmative, unambiguous obligations on Plaintiff with regard to: (1) any consequences that "result" from its work/activities in the Failing Building, and (2) its "surrender" obligations to deliver the leased premises in a state of "good condition and repair" and not in a condition of "strip or waste."[24]

Indeed, it is clear that in contemplating that Plaintiff would undertake *some* type of "remodel" in the Failing Building in 1996, the parties were exceedingly clear that Plaintiff *alone* would be responsible for "any modifications **to** the building," that may be required "as a result of [Ross'] work or other actives **in** the building," including, among other "code" requirements, compliance with all "seismic laws."  As noted in above, as a *direct* result of the 1996 work, and *Plaintiff's* election to strip *all* occupancy from the basement in the Failing Building, substantial

---

[22]   Pitt Decl., Ex. G – 1956 Failing Lease, Pg. 8 (emphasis supplied).

[23]   *Id.* – 1956 Failing Lease, Pgs. 7-8 (emphasis supplied).

[24]   *S-Tronix v. Submedia, LLC*, 2009 WL 152521, *3 (D.Or. 2009) ("[I]n Oregon 'it is hornbook law that strict and literal, rather than 'substantial,' compliance is required of express conditions.'") (citation omitted).

**Page 6 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

seismic upgrades are now required to restore *historical* retail/mercantile occupancy of the basement.[25]

Moreover, the above language must be read in conjunction with express language in the 1956 Failing Lease that *requires* Plaintiff to keep the leased premises in "good condition and repair" and affirmatively *precludes* Plaintiff from committing "strip or waste" of the entire leased premises, *including the basement*. Nor can there be any legitimate dispute that Plaintiff's unilateral removal of *all* "retail/mercantile" occupancy from then basement constitutes "strip or waste" of that portion of the Failing Building.[26]

In the final analysis, Plaintiff is, without question, required to "surrender" the *entire* "leased premises," including the basement, with the same *historical* retail/mercantile occupancy that existed in 1956 and when Plaintiff acquired the lease in 1996.

Accordingly, as there is no genuine issue of material fact – either as to the proper interpretation of the excerpted provisions of the Failing Lease, or Plaintiff's refusal to address and restore the historical "retail/mercantile" occupancy in the basement – the Court should grant summary judgment, in favor of Walker Place, as to this discrete issue.

### B.  Plaintiff's Statutory Obligations/Liability Under ORS 105.805.

Walker Place has pled claims for "waste" under *both* the express language of the Failing Lease and ORS 105.805, which statute provides in relevant part:

> "If a *** tenant *** for life or for years of real property commits waste thereon, any person injured thereby may maintain an action at law for damages against the *** tenant. In the action there may be judgment for treble damages, forfeiture of

---

[25]    The above language is also clearly not limited in time to only when Plaintiff initially undertook such "work" in 1996 but, rather, is broadly stated to encompass "***modifications to the building***" that "***may be required***" as "***a result of Lessee's work or other activities***." This "***as a result***" language places the obligation on Plaintiff to address its removal of occupancy in the basement and remedy the same at the termination of the lease.

[26]    *In re Stout's Estate*, 151 Or 411, 422, 50 P.2d 768 (1935) ("The question of what constitutes **waste _is determined primarily by the circumstance of whether or not the act, either of commission or omission, results in injury_** to the reversioner or the remainderman.").

SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

the estate of the party committing or permitting the waste and eviction from the property. ***."[27]

Aside from the clear violation of the express language of the Failing Lease, what constitutes "waste" is well established under Oregon law.  Specifically, "'[w]aste' occurs when a person in possession of the land, by act or omission, *causes the property's value to decrease* as the result of abuse or destruction, *thereby causing injury to the property and the holders of legal interests in it*."[28]  Further, the Oregon Supreme Court has noted that whether "waste" has occurred is dependent on the particular circumstances presented:

> "In this case, as in an action for waste under the common law, there can be no absolute rule as to what shall constitute a want of substantial repair under all conditions. **This depends upon the character of the building, its age, its location for the business to which it is adapted, the extent of the acts committed or allowed, and their effect upon the property in question.** The circumstances to be taken into account are so various that the case is one which raises a question of fact. *** [I]t is said that: **'An agreement that he will keep and leave the demised premises in good and tenantable repair obliges him to leave the premises in such repair as, taking into consideration the age, character, and locality, would make them reasonably fit for the occupation of a reasonably minded tenant of the class that would be likely to want such premises.** Whether the tenant is bound under such an agreement to repaint and repaper the premises depends upon whether the paint and paper are in such a bad state that no reasonably minded tenant would take the premises as they are.' ***'The life tenant is bound to keep the premises in as good repair as they were when he took them, not excepting ordinary or natural wear and tear;*** if a new roof is needed he is bound to put it on; if paint wears off he is bound to repaint.'"[29]

---

[27]    ORS 105.805 (Waste).

[28]    *Whistler v. Hyder*, 129 Or App 344 (1994) (emphasis supplied).

[29]    *In re Stout's Estate*, 151 Or 411, 50 P.2d 768 (1935) (emphasis supplied); *see also In re Emerson Street, LLC*, 2012 WL 6174995, *2 (Bnkr. Or. 2012) ("Waste *** 'occurs when the person in possession of the land, by act or omission, causes the property's value to decrease as the result of abuse or destruction, thereby causing injury to the property and the holders of the legal interests in it.'") (citations omitted); *Mountain High Homeowners Ass'n v. J.L. Ward Co.*, 228 Or App 424, 440, 209 P.3d 347 (2009) (Addressing a claim arising out of an improper placement of a servitude on land, the Court of Appeals held: "Waste occurs when a person or entity in possession of land, by act or omission, causes a decrease in value of the property interest in that land held by another who does not have possession.").

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

Here, Plaintiff committed waste of the *historical* "mercantile/retail" occupancy of basement of the Failing Building through, among other actions: (a) by its removal of the grand staircase that used to service the basement and first floor,[30] (b) by affirmatively stripping *all* occupancy out of the basement in connection with its 1996 permits submitted to the City of Portland, and (c) by removing and abandoning the "mercantile/retail" HVAC, electrical, lighting, fire and life safety systems, and restrooms from that space. Plaintiff's unilateral elections regarding its desired "use" of the basement does not, however, relieve Plaintiff of its contractual and statutory obligations to *remedy* those conditions upon termination of the Failing Lease.[31]

Following a ruling that Plaintiff has committed waste through the removal of the historical occupancy in the basement, Walker Place will present evidence (to the jury) of its resulting damages, comprised of *either* a diminution in the overall value of the Failing Building or, in the alternative, the cost to reestablish the historical "retail/mercantile" occupancy to the basement of the Failing Building.[32]

---

[30]     Indeed, the filling in of the grand staircase and removal of historical exits servicing the Failing Building basement also constitute a violation of the 1996 Sixth Amendment to the Failing Lease, which provides: "In altering or remodeling the leased premises, ***the Lessee shall not injure or change the general structural character of the leased premises or the building of which the premises are a part*** ***." (Pitt Decl., Ex. F – 1996 Sixth Amendment, Pg. 3, Para. 3).

[31]     *See Ball v. Day*, 57 Or App 384, 387, 644 P.2d 649 (1982) ("As a general rule, a commercial landlord has no duty to make repairs, ***and a decision by the tenant to alter the leased premises cannot in itself impose a duty upon the landlord to make repairs compatible with the tenant's alterations.***") (emphasis supplied); *See also Whistler v. Hyder,* 129 Or App 344, 348-349, 879 P.2d 214 (1994) ("The law imposes a duty of good faith and fair dealing in contracts to facilitate performance and enforcement in a manner that is consistent with the terms of the contract and that effectuates the reasonable contractual expectations of the parties. That implied duty is part of the requirement that [the tenants] keep the improvements in good condition.") (citations omitted).

[32]     *In re Stout's Estate,*151 Or 411, 423-424, 50 P.2d 768 (1935) ("The amount of recovery is the difference between the value of the property in its present condition and what it would be worth had the life tenant maintained and repaired the premises as a prudent person would have done under similar circumstances, or, in other words, the loss suffered by diminution in value of the property."); *Johnson v. Northwest Acceptance Corp.,* 259 Or 1, 11-13, 485 P.2d 12 (1971) ("This court has approved instructions stating that the measure of damages for waste is diminution of value. We also have held, however, that the proof of such diminution of value can be made by introducing the cost of repairs. *** 'It appears that, since the allowance of damages

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

Accordingly, as there is no genuine issue of material fact – either as to the proper interpretation of the excerpted provisions of the Failing Lease, or Plaintiff's violation of ORS 105.805 – the Court should grant summary judgment as to this discrete issue.

### III.   Walker Place Is Entitled To Partial Summary Judgment Against Plaintiff's Affirmative Defenses.

In response to Walker Place's Counterclaims, Plaintiff purports to assert a series of generic, overtly misplaced "affirmative defenses,"[33] all of which are either clearly inapplicable to Walker Place's specific Counterclaims, as a matter of law, or simply lack any factual support whatsoever.[34] For the reasons detailed below, Walker Place is entitled to summary judgment on each of Plaintiff's affirmative defenses, all of which lack substantive merit.[35]

///

---

is to award just compensation without enrichment, there is no universal test for determining the value of property injured or destroyed and that the mode and amount of proof must be adapted to the facts of each case. * * *'") (citations omitted). Although not necessary to this Motion, or the discrete issue now before the Court, evidence pertaining to the recovery of both "cost of repair" and "diminution is value" is attached hereto. (Pitt Decl., Ex. C, Pgs. 7 and 8 (Waterleaf Reports – Memo and Seismic Upgrade Costs); and Pitt Decl., Ex. H, Pgs. 2-5 (Heerman Report, November 6, 2015, Pgs. 2-5).

[33]   Plaintiff's boilerplate "affirmative defenses," wholly devoid of factual detail, are as follows: (1) Failure to State a Claim, (2) Waiver, (3) Estoppel, (4) Unclean Hands, (5) Laches, (6) Breach by Walker Place, and (7) Statute of Limitations. (Dkt. #23 – Pl. Aff. Def., Pgs. 6-8).

[34]   *Voltage Pictures, LLC v. Blake,* 2015 WL 9272880, *6 (D.Or. 2015) ("This court and a majority of other district courts in this circuit also apply the *Twombley* and *Iqbal* plausibility requirements to affirmative defenses. Accordingly, *an affirmative defense must give notice of the nature of the defense and provide a plausible factual basis for the defense*.") (emphasis supplied); *Celotex Corp. v. Caltrett,* 477 U.S. 317, 323-324, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) ("*One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses*….") (emphasis supplied).

[35]   An early ruling on these discrete issues is important as it will streamline a resolution of the two central issues in this litigation at the time of trial, *viz.,* the "severance" obligations and the proper scope of work which Plaintiff is obligated to "separate" the two buildings, and the "surrender" obligations, which requires Plaintiff to return the Failing Building in a state of good repair and not in a condition of strip or waste. Indeed, the purported affirmative defenses of Plaintiff, inapplicable to the Walker Place Counterclaims, would only serve to confuse or mislead the jury in this litigation.

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

### A.  First Affirmative Defense (Failure to State a Claim).

In its First Affirmative Defense, Plaintiff alleges:

> "Solely by way of an affirmative defense, not to be construed as an admission, the Counterclaims fail to allege sufficient facts upon which any claim for relief against Ross can be granted."[36]

It is well established that a mere "denial of liability," as clearly reflected in the above allegations, is not a true affirmative defense.[37] Accordingly, the Court should grant summary judgment on Plaintiff's First Affirmative Defense.

### B.  Second Affirmative Defense (Waiver).

In its Second Affirmative Defense, Plaintiff alleges *solely*:

> "Solely by way of an affirmative defense, not to be construed as an admission, the Counterclaims are barred, in whole or in part, by the doctrine of waiver."[38]

At its base, waiver is "the intentional relinquishment of a known right."[39]

> "***[I]n the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby,*** unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. ***To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose*** or acts amounting to an estoppel on his part."[40]

---

[36]    Dkt. #23 – Pl. Aff. Def., Pg. 7.

[37]    *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *Voltage Pictures, LLC v. Blake*, 2015 WL 9272880, *6 (D.Or. 2015) ("Failure to state a claim is not an affirmative defense. Affirmative defenses raise matters extraneous to the complaint. Failure to state a claim is a denial of the allegations in a complaint, raising no extraneous issues. Accordingly, failure to state a claim is not a proper affirmative defense.").

[38]    Dkt. #23 – Pl. Aff. Def., Pg. 7.

[39]    *Genesis Indem. Ins. Co. v. Deschutes Cnty.,* 194 Or App 446, 453, 95 P.3d 748 (2004) (*citing Bennett v. Farmers Ins. Co.,* 332 Or. 138, 156, 26 P.3d 785 (2001); *Crain v. Siegel,* 151 Or App 567, 573, 950 P.2d 382 (1997)).

[40]    *Brown v. Portland Sch. Dist. No. 1,* 291 Or 77, 84, 628 P.2d 1183 (1981) (emphasis supplied); *Smith v. Martin,* 94 Or 132, 141-142, 185 P. 236 (1919) ("***Waiver depends upon what one himself intends to do; estoppel depends upon what he caused his adversary to do.***") (emphasis supplied). The complete absence of any evidence supporting the Ross' affirmative defense for "estoppel" is addressed in Section III C below.

---

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

Here, there is absolutely *no* evidence of an "express" (*i.e.,* written) waiver, by Walker Place (or its predecessors), regarding any contractual, statutory, or common law right underpinning the specific damages and relief now sought by Walker Place in its First, Second, and Third Counterclaims in this matter.[41]  Moreover, there is *no* evidence remotely supporting an "implied" waiver – requiring a "clear, unequivocal, or decisive act" – under Oregon law.[42]

Applied to the primary issues in this litigation, clearly no waiver can exist regarding the end of lease "separation" obligations of Plaintiff under the Failing Lease, or the end-of-lease "surrender" obligations of Plaintiff to address the consequences of its stripping of *all* "retail/mercantile" occupancy from the Failing Building basement – which became permanent/irrevocable in 2004 under the City code – and only discovered as part of this litigation.[43]

Accordingly, the Court should grant summary judgment on Plaintiff's Second Affirmative Defense.

---

[41]    Under the heading of "Waiver," the 1956 Failing Lease also precludes an alleged waiver of Plaintiff's current "severance" and "surrender" obligations, stating in relevant part: "A waiver of any breach of any covenant, term or condition of this lease *shall not be considered a waiver of any other breach of the same or any other provision or covenants*…." (Pitt Decl., Ex. G – 1956 Failing Lease, Pg. 14, Waiver).

[42]    *Tri-County Metropolitan Transit Dist. v. Time Warner Telecom of Oregon, LLC*, 2008 WL 4572519, *6 (D.Or. 2008) ("'Waiver, as distinguished from estoppel, is the intentional relinquishment of a known right.' A party to a written contract may waive a provision of that contract by conduct or by oral representation. *Waiver by conduct, however, requires a 'clear, unequivocal, decisive act.*'"); *Ionian Corp. v. Country Mut. Ins. Corp.,* 88 F.Supp.3d 1187, 1199 (D.Or. 2015) ("*Waiver may be implied by conduct, but there must be 'clear, decisive and unequivocal conduct which indicates a purpose to waive the legal rights involved[.]*'") (emphasis supplied); *Bank of Eastern Oregon v. Griffith*, 101 Or App 528, 536, 792 P.2d 1210 (1990) ("Waiver is a voluntary, intentional relinquishment of a known right. It is primarily a question of intent, which may be express, such as by a written release under ORS 79.4060, or implied from the conduct of the secured party. *However, the intention to waive must clearly appear; it will not be inferred, except from a clear and unequivocal act manifesting an intent to waive.*") (emphasis supplied).

[43]    *Stanley v. Mueller,* 222 Or 194, 207, 350 P.2d 880, 887 (1960) ("It is settled law that a waiver of a legal right results *only when there is both full knowledge of all the facts* and the existence of the right of election coupled with an intention to relinquish it.").

**Page 12 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

### C.  Third Affirmative Defense (Estoppel).

In its Third Affirmative Defense, Plaintiff alleges *solely*:

> "Solely by way of an affirmative defense, not to be construed as an admission, the Counterclaims are barred, in whole or in part, by the doctrine of estoppel."[44]

In addition to the absence of any substantive allegations, this defense fails both as a matter of law and fact under the weight of the following well established formulation:

> "Under the doctrine of equitable estoppel, 'a person may be precluded by his act or conduct, or silence when it was his duty to speak, from asserting a right which he otherwise would have had.' Equitable estoppel has five elements:
>
>> 'To constitute estoppel by conduct there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it[.]'
>
> For equitable estoppel to apply, ***the false representation 'must be one of existing material fact, and not of intention, nor may it be a conclusion from facts or a conclusion of law.'***"[45]

Here, Plaintiff will be unable to establish *any* of the above elements in relation to the *any* of the "separation" or "surrender" obligations of the Failing Lease, and the damages and relief now sought by Walker Place in its First, Second, and Third Counterclaims in this matter.

Respectfully, it is truly difficult to conceive of *any* scenario where Plaintiff may assert it was somehow laboring under a false belief, resulting from any alleged act/omission, *attributable to Walker Place*, and where Walker Place possessed superior, undisclosed information, and which information Plaintiff did not *itself* possess/create in this first instance.[46]  Nor will there be

---

[44]    Dkt. #23 – Pl. Aff. Def., Pg. 7.

[45]    *Day v. Advanced M & D Sales, Inc.,* 336 Or 511, 518-519 (2004) (emphasis supplied).

[46]    *Hamilton v. Silven, Schmeits & Vaughan, P.C.,* 2011 WL 6887132, *6 (D.Or. 2011) ("The party seeking estoppel must demonstrate not only reliance, but a right to rely upon the representation of the estopped party ... ***Reliance is not justified where a party has knowledge to the contrary of the fact or representation allegedly relied upon***.") (emphasis supplied).

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

*any* evidence that Plaintiff would have pursued *any* different course of action, *whether in 1996 or anytime thereafter*, in relation to the matters that are the subject of Walker Place's First, Second, and Third Counterclaims in this matter.[47]

Accordingly, the Court should grant summary judgment on Plaintiff's Third Affirmative Defense.

### D.  Fourth Affirmative Defense (Unclean Hands).

In its Fourth Affirmative Defense, Plaintiff alleges *solely*:

> "Solely by way of an affirmative defense, not to be construed as an admission, the Counterclaims are barred, in whole or in part, by the doctrine of unclean hands."[48]

Here, there is no basis whatsoever to invoke the doctrine of "unclean hands" in this litigation, whether in relation (1) to Walker Place's First Counter-Claim for Declaratory Judgment, an equitable claim, or (2) to Walker Place's Second and Third Counterclaims, which are strictly legal causes of action.[49]  Moreover, "unclean hands" – an equitable doctrine – has no application to Walker Place's legal causes of action as set forth in its Second and Third Counterclaims, which are claims to be presented to the jury.[50]

---

[47]     *DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F.Supp.2d 1042, 1062 (D.Or. 2011) (Dismissing estoppel defense where, "***Defendant failed to introduce any evidence that, absent plaintiff's alleged misrepresentation, it would have taken different action***….").

[48]     Dkt. #23 – Pl. Aff. Def., Pg. 7.

[49]     *See Welsh v. Case,* 180 Or App 370, 385, 43 P.3d 445, 454 (2002) ("'Unclean hands' is an equitable doctrine under which the court, in order to protect its own integrity, will deny equitable relief to a party in a transaction if that party, relative to the same transaction, is 'guilty of improper conduct no matter how improper the [other party's] behavior may have been.'").

[50]     *Rise v. Steckel,* 59 Or App 675, 681, 652 P.2d 364, 369 (1982) ("[Unclean hands] applies to any party who seeks either the affirmative or defensive intervention of the court for equitable relief."); *McKinley v. Weidner*, 73 Or App 396, 400, 698 P.2d 983 (1985) (Noting, the "substantive application of the equitable doctrine of clean hands to an action at law was technically incorrect."); *James v. Recontrust Co.,* 2011 WL 3841558, *4 (D.Or. 2011) ("The cases applying the unclean hands rule involve some nefarious conduct on the part of the party barred from equitable relief, not merely a head-to-head disagreement over the legal rights under a statute."); *Del Monte Fresh Produce N.A., Inc. v. H.J. Heinz Co.,* 2008 WL 607415, *1 (D.Or. 2008) ("Del Monte moves to strike Heinz's affirmative defense of unclean hands.

---

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

Accordingly, the Court should grant summary judgment on Plaintiff's Fourth Affirmative Defense.

### E.  Fifth Affirmative Defense (Laches).

In its Fifth Affirmative Defense, Plaintiff alleges *solely*:

> "Solely by way of an affirmative defense, not to be construed as an admission, the Counterclaims are barred, in whole or in part, by the doctrine of laches."[51]

Again, there is no basis to invoke the doctrine of "laches" in this litigation, whether in relation to: (1) Walker Place's First Counter-Claim for Declaratory Judgment, an equitable claim, or (2) Walker Place's Second and Third Counterclaims, which are strictly legal causes of action.[52] Further, "laches" – an equitable doctrine – has no application whatsoever to Walker Place's legal causes of action as set forth in its Second and Third Counterclaims, which are claims to be presented to the jury.[53]

Accordingly, the Court should grant summary judgment on Plaintiff's Fifth Affirmative Defense.

### F.  Sixth Affirmative Defense (Breach by Walker Place).

In its Sixth Affirmative Defense, Plaintiff alleges *solely*:

> "Solely by way of an affirmative defense, not to be construed as an admission, the Counterclaims are barred, in whole or in part, because ***Walker Place breached its own obligations and by reason of such material breach*** is not entitled to any relief."[54]

---

Del Monte's claims are legal causes of action. Consequently, the defense of unclean hands, an equitable doctrine, has no application.").

[51]     Dkt. #23 – Pl. Aff. Def., Pg. 7.

[52]     *Communication Management Services, LLC v. Qwest Corp.,* 67 F.Supp.3d 1159, 1175 (D.Or. 2014) ("Laches bars a party from asserting ***an equitable claim*** when the party (1) had actual or 'inquiry notice' of a claim, (2) unreasonably delayed bringing that claim, and (3) the delay substantially prejudiced the defendant 'to the extent that it would be inequitable to afford the relief sought.'") (emphasis supplied).

[53]     *Id.*

[54]     Dkt. #23 – Pl. Aff. Def., Pg. 8 (emphasis supplied).

**Page 15 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

As an initial matter, the absence of *any* allegations purporting to detail a *specific* breach by Walker Place of the Failing Lease – much less one of a "material" nature – is certainly telling.[55]  Notwithstanding, there is absolutely *no* evidence of any material breach – attributable to Walker Place – that would support a wholesale relief, of Plaintiff, to perform its corresponding obligations to fully comply with either the "separation" or "surrender" obligations of the Failing Lease, both of which form the basis of Walker Places First, Second, and Third Counterclaims.[56]

Respectfully, Plaintiff will be unable to articulate any non-trivial or otherwise viable "breaches" attributable to Walker Place in this matter.[57]  Accordingly, the Court should grant summary judgment on Plaintiff's Sixth Affirmative Defense.

### G.  Seventh Affirmative Defense (Statute of Limitations).

In its Seventh Affirmative Defense, Plaintiff alleges:

> "Solely by way of an affirmative defense, not to be construed as an admission, the Counterclaims are barred, in whole or in part, by the relevant statutes of limitations, including O.R.S. § 12.080."[58]

As to the end of lease obligations of Plaintiff (*i.e.,* the "separation" and "surrender" obligations), which include returning the Failing Building – and its basement – to state of good repair and not in a condition of strip or waste – those claims are not barred by ORS 12.080.

---

[55]    A material breach of contract occurs if the failure of one party to perform "goes to the very substance of the contract and defeats the object of the parties in entering into the contract." *Bisio v. Madenwald*, 33 Or App 325, 331, 576 P.2d 801, *rev. den.* 283 Or 1 (1978).

[56]    *Wasserburger v. American Scientific Chemical, Inc.,* 267 Or 77, 82, 514 P.2d 1097 (1973) ("It is also well established, at least as a general rule, that a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty."); *Garcia v. Lupton,* 2016 WL 107955. *5 (D.Or. 2006) (J. Simon) ("[A] breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty.").

[57]    *See Reeder v. Kay,* 282 Or 191, 194, 577 P.2d 925 (1978) ("An immaterial breach by one party does not operate to discharge an obligation by the other party to perform.").

[58]    Dkt. #23 – Pl. Aff. Def., Pg. 8.

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

Although Plaintiff does not identify which subsections within ORS 12.080 upon which it seeks to rely, there can be only two: (1) ORS 12.080(1), applicable to an "action upon a contract," and (2) ORS 12.080(3), applicable to an "action for waste *** or injury to any interest of another in real property." Each will be addressed in turn below.

## i.    ORS 12.080(1).

There can be no credible assertion that the counterclaims of Walker Place regarding the "separation" obligations of Plaintiff – the "performance" of which necessarily arise at the termination of the Failing Lease – are somehow time barred under ORS 12.080(1).[59]

So too with the "surrender" obligations of Plaintiff – which include returning the Failing Building (and its basement) to state of good repair and not in a condition of strip or waste – the "performance" of which also necessarily arises, under its express terms, *at the termination of the Failing Lease*. Based on Plaintiff's present, unequivocal *repudiation* of those "surrender" obligations, Walker Place's counterclaims encompassing those matters are both timely and proper.[60]

Accordingly, as to Walker Place's First and Second Counterclaims, when viewed as "an action upon contract," the matters encompassed therein are certainly timely, as defined by the required "separation" and "surrender" obligations under the Failing Lease at termination, and the Court should grant summary judgment on Plaintiff's Seventh Affirmative Defense.

///

---

[59]    *Meunier v. Northwestern Mut. Life Ins. Co.,* 51 F.Supp.3d 1023 (D.Or. 2014) ("Under Oregon law, a claim for breach of contract accrues when the contract is breached. *A breach of contract is nonperformance of a duty due under a contract.*") (emphasis supplied); *Kantor v. Boise Cascade Corp.,* 75 Or App 698, 703, 708 P.2d 356 (1985) (same).

[60]    *Zurcher v. Booth,* 80 Or 335, 338, 157 P. 147 (1916) ("An action upon a contract or liability express or implied can only be commenced within six years after the cause of action shall have accrued. *The statute of limitations begins to run from the time when a complete cause of action accrues; that is, when an action may be maintained.*") (emphasis supplied).

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

ii.    **ORS 12.080(3).**

It is well established that an "action for waste *** or injury to any interest of another in real property" is subject to a discovery rule.[61]

Here, as to Walker Place's Third Counterclaim seeking damages arising out of the profound consequences resulting from Plaintiff's election to strip *all* occupancy from the basement of the Failing Building – which election *only* became permanent/irrevocable in 2004 under the City code – there is no genuine issue of material fact that Walker Place either did or somehow should have "discovered" such injury outside the limitations period of ORS 12.080(3).

Accordingly, as to Walker Place's Third Counterclaim, when viewed as "an action for waste or injury to real property," the claim for damages/injury directly resulting from the basement of the Failing Building is timely as a matter of law, and the Court should grant summary judgment on Plaintiff's Seventh Affirmative Defense as to those discrete matters.

IV.    **Walker Place Is Entitled to Partial Summary Judgment Regarding The Relief Sought by Makarios-Oregon, LLC In Its Motion No. 1 Regarding the "Severance" Obligations of Plaintiff Under The Failing Lease and Richmond Lease.**

Walker Place joins in "Motion No. 1" of Defendant Makarios in the above-captioned matter.  In support of this joinder – and in keeping with Section 16.02 of the Richmond Lease – the 1956 Failing Lease sets forth a corresponding set of requirements regarding the "Severance" obligations in this matter:

> "The Lessee [Ross] agrees that, prior to the expiration of this lease or, in the event of termination of this lease for any reason whosoever, promptly after such termination, *it will at its sole cost and expense do and perform such work as shall be necessary to physically separate, and constitute entirely independent and self-sufficient, the demised premises from the adjacent 'Richmond Building' premises*. Without limiting the generality of the foregoing, such work

---

[61]    *Goodwin v. Kingsmen Plastering, Inc.,* 267 Or App 506, 509, 340 P.3d 169 (2014) (Expounding ORS 12.080(3): "With a discovery rule, the period of limitations would be deemed to commence *upon either the date that plaintiff actually discovered the injury or the date that a person exercising reasonable care should have discovered the injury*.") (emphasis supplied).

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

shall include: removal of the escalators and the closing in of the openings in the floors and walls of the Failing Building which accommodate the same; *__construction of footings and masonry curtain walls along the easterly boundary line of the demised premises;__* and such appropriate alterations, changes and relocations of portions of the plumbing, electric*__, and other systems and apparatuses as may be necessary to make the 'Failing Building' space independent of the 'Richmond Building'.__* The material used in said work shall conform to the material of said Failing Building, and the work shall be done in a good and workmanlike manner."[62]

Without unnecessarily repeating the argument from the Makarios brief, it is clear that Plaintiff's separation "plans" makes no attempt to "physically separate" the Failing Building "from the adjacent 'Richmond Building' premises," and which – similar to the Richmond Lease – *requires* the "construction of ***footings and masonry curtain walls*** along the easterly boundary line demised premises" as excerpted above.

Indeed, Plaintiff's "plans" for metal stud "partition walls" resting on the existing ***shared floors*** of the two buildings are not remotely equivalent to a masonry "curtain wall," which necessarily encompasses an exterior skin for the Failing Building, and is required to render it "entirely independent and self-sufficient" from the Richmond Building.[63]

In an attempt to avoid these unambiguous "severance" obligations, Plaintiff will very likely seek to argue that the 1946 Failing Lease between Newberry and the prior Failing Building ownership somehow changes the analysis by stating the Richmond Building was described (in that *prior document 10 years earlier*) to be constructed in a way that "partition walls" could be added between it and the Failing Building so the Richmond Building could be used as a "self-contained" building as regards to certain systems.

---

[62]    Pitt Decl., Ex. G – 1956 Failing Lease, Pg. 3, "Severance." (emphasis supplied).

[63]    As noted by Makarios, in order to construct a "curtain wall," the concrete floors and steel beams that span the Richmond and Failing Building structures need to be cut away from each other. The escalator framing that crosses the property lines on the first and second floors likewise must be cut to "physically separate" the two buildings. Under Plaintiff's "plans" there is no question that the Failing Building and Richmond Building would continue to be *physically dependent*" in perpetuity, in clear violation of the Failing Lease.

**Page 19 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**SLINDE NELSON STANFORD**
111 SW Fifth Avenue, Suite 1940
Portland, OR 97204
p. 503.417.7777; f. 503.417.4250

Lest there be any continuing doubt as to which document(s) control the disposition of this discrete matter, the 1996 Amendment to the Failing Lease unambiguously affirms the 1956 Failing Lease controls, providing in relevant part:

> "D.  Lessee represents and warrants that it has succeeded to all right, title and interest of Lessee's predecessor in and to the Lease and **_has assumed the obligations of Lessee thereunder, including specifically, but not by way of limitation, the obligation to physically separate_** and restore the premises at the expiration or termination of the Lease, **_as described in the paragraph entitled 'Severance' on page 3 of the August 31, 1956 amendment and restatement of the Lease._**"[64]

Contrary to Plaintiff's anticipated assertions, the parties' "intent" regarding the import of the Failing 1956 Lease *alone* – as well as *corresponding* 1956 Richmond Lease[65] – is beyond dispute, which documents clearly control what is now required to comply with Plaintiff's end-of-lease "severance" obligations regarding these two buildings.[66]

If, as Plaintiff urges, the 1946 Failing Lease is evidence that the buildings were to be separated with "partition walls" so the building systems were "self-contained," then Newberry could have simply repeated the language from the 1946 Failing Lease in the applicable "Severance" section of the 1956 Failing Lease.  It did not do so, however.  Rather, the parties crafted a very different obligation above.

First, it is particularly instructive here when, *in 1996,* as part of the parties' agreement to allow Plaintiff to directly "assume" the then existing obligations of Newberry, *including the end-*

---

[64]    Pitt Decl., Ex. F – 1996 Sixth Amendment, Pg. 1, Recital D. (emphasis supplied).

[65]    The Court should note that Plaintiff, having submitted a *single* "plan" to the City in October of 2015, recognizes that, as a practical and legal matter, it must comply with the corresponding obligations of *both* the Failing Lease and Richmond Lease in effecting a separation of these two buildings.  (Pitt Decl., Ex. E, Pgs. 3 and 4 (Bowles Dep., 226:22-25-227:1-15)).

[66]    ORS 42.300 ("Except for the recital of the consideration, ***the truth of the facts recited from the recital in the written instrument shall not be denied by the parties thereto***, their representatives or successors in interest by subsequent title.").

*of-lease "severance" obligations* of Newberry, the parties were exceedingly clear to expressly "call out" the controlling provisions from the 1956 Failing Lease.  Second, the 1946 Failing Lease, which was executed *10 years earlier*, under very different circumstances, cannot be used to contradict the plain meaning of the 1956 Failing Lease.  Third, to the extent the 1946 Failing Lease provides any evidence of Newberry's *earlier* intent regarding this matter, it clarifies that Newberry might have tried to bargain for the work Plaintiff now proposes under the "Severance" section of the 1956 Failing Lease, but did not succeed.

In the final analysis, the Court should simply require Plaintiff to comply with the plain meaning of the 1956 Failing Lease, which requires Plaintiff to render the Failing Building capable of standing on its own, along with an exterior "masonry curtain wall with footings" at the termination of the Failing Lease.

## Conclusion

For the preceding reasons, the Court should grant partial summary judgment as to the matters identified above.

DATED this 1st day of February 2016.

SLINDE NELSON STANFORD


By:___/ s /  *Keith A. Pitt*_____
     Keith A. Pitt, OSB No. 973725
     *Of Attorneys for Walker Place, LLC*


**Page 21 – WALKER PLACE'S SUPPORTING MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2)**

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7,805 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED:  this 1st day of February 2016.

SLINDE NELSON STANFORD

By:___/ s /  Keith A. Pitt_____
    Keith A. Pitt, OSB No. 973725
    *Of Attorneys for Walker Place, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **WALKER PLACE LLC'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW** on:

Thomas V. Dulcich                                    Gregory D. Call *(Pro Hac Vice)*
Rebecca Boyette                                       Tracy E. Reichmuth *(Pro Hac Vice)*
Schwabe Williamson & Wyatt PC           Crowell & Moring LLP
1211 SW Fifth Avenue, Suite 1900         275 Battery Street, 23rd Floor
Portland, OR 97204                                 San Francisco, CA 94111
Tele: 503-222-9981                                  Tele: 415-986-2800
Fax: 503-796-2900                                   Fax: 415-986-2827
*Of Attorneys for Ross Dress For Less, Inc.*    *Of Attorneys for Ross Dress For Less, Inc.*

Lisa A. Kaner
Jeffrey M. Edelson
Molly K. Honore
Markowitz Herbold PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR 97204-3730
Tele: 503-295-3085
Fax: 503-323-9105
*Of Attorneys MAKARIOS-OREGON, LLC*

by the following indicated method(s):

☐      by **faxing** full, true, and correct copies thereof to said attorney to the fax number noted above, which is the last known fax number for said attorney, on the date set forth below.

☐      by **emailing** full, true, and correct copies thereof to said attorney to the email address noted above, which is the last known email address for said attorney, on the date set forth below.

☒      by notice of electronic filing using the CM/ECF system.

☐      by causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last-known office address(es) listed above on the date set forth below.

DATED:  February 1, 2016.                    SLINDE NELSON STANFORD


By:     */ s / Keith A. Pitt*
        Keith A. Pitt, OSB No. 973725
        *Of Attorneys for Defendant Walker Place, LLC*


**PAGE 1 – CERTIFICATE OF SERVICE**