124

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ROSS DRESS FOR LESS, INC., a
Delaware Corporation,

       Plaintiff,

v.                        No. 3:14-cv-01971-SB

MAKARIOS-OREGON, LLC, an
Oregon limited liability
company; and WALKER
PLACE, LLC, an Oregon limited
liability company,

       Defendants.
_____/


DEPOSITION OF

JOHN HASKINS

_____

Wednesday, October 21, 2015

(Volume II, pages 124 - 192)


REPORTED BY:  DONIELLE DEL CARLO, CSR 10476

John Haskins                                      October 21, 2015
Ross Dress for Less, Inc v. Makarios-Oregon, LLC      No. 3:14-cv-01971-SB

129

1    right now, but let me just get some clarity.  In

2    your last deposition -- well, as you're aware, there

3    are two buildings involved in this litigation.  One

4    is the building owned by my client, Walker Place,

5    LLC, which is the 620 building located at 620

6    Southwest Fifth Avenue here in Portland, Oregon.

7            We've called it by various names,

8    including the "620 Building," the "Failing

9    Building," and, I think, in your prior deposition

10   you referred to it as the "Brandon Building."

11       A    Correct.

12       Q    Okay.  And then there's a separate

13   building owned by the Makarios group which is known

14   as the Richmond Building.

15       A    I believe I --

16       Q    Correct?

17       A    Correct.  I believe I referred to that as

18   Calomiris.

19       Q    Yeah.  That's right.  The Calomiris

20   Building or the tall and the short building.

21   Brandon has -- 620 building is the tall building,

22   Calomiris is the short building, correct?

23       A    Correct.

24       Q    Okay.  If you could just -- I just want to

25   set the stage again to get us started.  I understand

130

1    from review -- well, let me ask you this:  Prior to

2    your deposition today, have you reviewed any

3    additional documents to prepare for your deposition

4    today?

5         A    I looked at exhibits for today that

6    were -- I guess with counsel.

7         Q    Okay.  And part of the materials I sent to

8    counsel I also provided a mini deposition transcript

9    of your prior deposition testimony.  Did you have a

10   chance to read your prior dep -- your prior

11   testimony before today?

12        A    I did.

13        Q    Okay.  And did you actually read it or did

14   you actually review it?

15        A    I did.

16        Q    Okay.  To get us started, I understand

17   that you were involved with the construction and

18   build out of the -- of these two buildings with

19   regard to Ross' use of them back in '96; is that

20   right?  Is that correct?

21        A    Correct.

22        Q    If you could just set the stage for us

23   again, what was your title and role with regard to

24   that -- to that build out?

25        A    My title was Director of Construction.  My

131

1    role was to oversee both the store design and

2    construction of the Ross store.  Which included both

3    buildings.

4         Q    Okay.  And it's my understanding from your

5    prior deposition that you didn't have any role or

6    knowledge of the acquisition process of the

7    buildings; is that correct?

8         A    That's correct.

9         Q    Okay.  I want to focus on a couple of

10   things in particular to the -- well, actually, let

11   me ask you this:  In your prior deposition -- at the

12   beginning of your deposition when you were asked

13   about this you indicated, I could read it to you,

14   that you were more familiar with what you called the

15   Brandon Building.  Do you recall that -- that

16   testimony?

17        A    That I was more familiar?

18        Q    Yes.

19        A    I don't recall that or the context of it.

20        Q    Let me ask you --

21        A    If you could read it to me then maybe I

22   could --

23        Q    Are you familiar with issues pertaining to

24   the Failing Building than you are with the Calomiris

25   Building?

John Haskins                                              October 21, 2015
Ross Dress for Less, Inc v. Makarios-Oregon, LLC          No. 3:14-cv-01971-SB

132

1        A    I'm not sure I understand what issues you

2   mean.

3        Q    Well, let's -- well, let me ask you this:

4   When you call it the Brandon Building, I take it

5   you're referring to Brandon Anderson, one of the

6   principals in Walker Place, LLC, correct?

7        A    Correct.

8        Q    But you refer to him as Brandon.  In what

9   context did you come to understand that Brandon

10  Anderson owned this property through his LLC?

11       A    I think it's just by reference, and that's

12  what I remember.

13       Q    Did you ever meet Mr. Anderson?

14       A    I don't recall.  I don't think I've ever

15  met him, no.

16       Q    Okay.  Well, then, let's -- let's go back

17  to 1996, and just generally what was your

18  understanding of the scope of work Ross undertook to

19  make those -- those two buildings ready for its

20  intended use?

21       A    The scope of work would have been to

22  conform to basically the Ross store plan, via design

23  and construction, and get that to opening for

24  operation.

25       Q    Okay.  And your role on this particular

141

1          MS. REICHMUTH:  Objection.  Vague and

2    ambiguous.

3          THE WITNESS:  Are you talking about from

4    the prior use?

5          MS. REICHMUTH:  I'm talking about the

6    condition of the basement and the staircase as it

7    existed prior to Ross' undertaking its build out.

8          THE WITNESS:  Right.  I believe I recall

9    that there was a staircase and a stairwell.

10   Prior --

11         MS. REICHMUTH:  Hang on.  Our lights just

12   went out here.

13         THE WITNESS:  You just gotta move.

14         THE VIDEOGRAPHER:  You gotta move.

15         MS. REICHMUTH:  Apparently, we were too

16   still.

17         THE WITNESS:  Sorry about that.  Could

18   you --

19         MS. REICHMUTH:  Do you want the question

20   read back maybe?

21         THE WITNESS:  Yes.

22         (Record read as follows:  Question:  A
     staircase that allows access between the basement --
23   a basement and a first floor, you wouldn't expect
     just to have an open cavity in the floor, correct?
24   You would expect to see some railings and other
     things around that hole and that cavity to allow
25   people to safely access and use it, correct?)

142

1          THE WITNESS:  So if it were in use and it

2  was allowed to be accessible you would expect

3  railings, etc. that it was for a prior use.

4  BY MR. PITT:

5      Q    Do you recall if those railings were there

6  at the time Ross acquired ownership of the building?

7  Or, I mean, acquired a leasehold right to occupy

8  those spaces in the building?

9      A    That's possible.

10     Q    Okay.  And well, let me just ask you to

11 put it in your own words.  What -- what did Ross do

12 with that staircase in relationship to its -- to its

13 build out of the Failing Building?

14         MS. REICHMUTH:  Objection.  Asked and

15 answered.

16         THE WITNESS:  I believe Ross left the

17 staircase in place and infilled the floor slab for

18 general retail use.

19 BY MR. PITT:

20     Q    Okay.  And prior to Ross undertaking that

21 build out, do you have any awareness one way or the

22 other what that -- what that basement space was used

23 for prior to Ross acquiring interest in it?

24     A    I believe it was a retail use, mercantile,

25 J.J. Newberry.

John Haskins
Ross Dress for Less, Inc v. Makarios-Oregon, LLC

October 21, 2015
No. 3:14-cv-01971-SB

143

1    Q    Okay.  And did Ross -- let me ask -- did

2  Ross utilize that space in the basement for a retail

3  or mercantile use?

4         MS. REICHMUTH:  Objection.  Vague and

5  ambiguous.

6         THE WITNESS:  Which part of the basement?

7  BY MR. PITT:

8    Q    Well, let me ask you this way:  As part of

9  its build out, did Ross have an intention to utilize

10  the basement space within the footprint of the

11  Failing Building for mercantile or retail use?

12         MS. REICHMUTH:  Objection.  Vague and

13  ambiguous.

14         THE WITNESS:  We do have a retail use in

15  the basement where the operation of the Ross

16  basement use ends in its relationship to the Lease

17  line or whatever.  I mean, I'm not sure.  There was

18  a portion there that we are not currently using.

19  BY MR. PITT:

20    Q    Well, Ross is using a portion of the

21  basement for storage on the Richmond side of the

22  building, correct?

23    A    I believe it's storage, office use,

24  administrative.

25    Q    Okay.  And on the Failing side of the

146

1          MR. PITT:  Yes.  If we could mark it as --

2     was it 85?  86?

3          MS. REICHMUTH:  I think we're on 85.

4                    (Exhibit 85 marked

5                     for identification.)

6          MR. EDELSON:  Now we have 82, 86 because

7     the Addendum and the Lease.  The Lease should have

8     been 84, the Addendum to the Lease 85.

9          MR. PITT:  I think the Addendum was

10    already in there.

11         MS. REICHMUTH:  Yeah.  The Addendum is

12    No. 9.

13    BY MR. PITT:

14    Q    Yeah.  If you could take a quick look at

15    this, Mr. Haskins, I would appreciate it, and tell

16    me what this is to your understanding.

17    A    Well, in reviewing the documents, with the

18    exception of three pages that seem to be co-mingled,

19    the majority of this is the original sign exhibits

20    and documents for doing signage for the original

21    store.

22    Q    Let's focus on the first page.  This is

23    the way the document came to us.  Or I believe it

24    came to us.  But primarily I'm concerned with and

25    want to look at the first page.

John Haskins
Ross Dress for Less, Inc v. Makarios-Oregon, LLC

October 21, 2015
No. 3:14-cv-01971-SB

147

1      A     Okay.  It's very small.

2      Q     Yeah.  To your understanding, what does

3   this first page represent?

4      A     It appears to be the store layout for the

5   basement.

6      Q     Okay.  And on the side there it's got

7   Ross.  It says "Ross Store Remodel."  Do you see

8   that?

9      A     I see it.

10     Q     Right above the A -- A 1.0.  Do you see

11  that on the right-hand side of the document?

12     A     I see that.

13     Q     Then next to that is the name of Musil,

14  Perkowitz & Ruth.  Do you see that?

15     A     I see that.

16     Q     Who are Musil, Perkowitz & Ruth?

17     A     I believe Musil, Perkowitz & Ruth were one

18  of the architects involved as an architect of record

19  with this project for Ross.

20     Q     Okay.  And this first page represents the

21  build out plans for the basement space on the

22  Failing Building, at least in part, correct?

23     A     It shows a layout.  I don't know if it's a

24  build out quite.  I can't see any of these

25  references.

148

1    Q    Okay.  Well, a layout, right?

2    A    Correct.

3    Q    A layout in terms of intended use?

4    A    That's my belief.

5    Q    Okay.  There's another document, Counsel,

6    that I sent down that is just two pages, and I

7    actually blow -- I actually blow up one of the

8    notations on the exhibit the witness was just

9    looking at.  If you could pull that out of the

10   stack, please.

11        MS. REICHMUTH:  I'm sorry.  Could you

12   repeat that?

13        MR. PITT:  Yeah.  So there's a two-page

14   document I sent down which has -- which has a blow

15   up of one of the notations on that first page of the

16   Exhibit 85 the witness was just looking at.

17        MS. REICHMUTH:  Okay.

18        MR. PITT:  And then another copy of that

19   exhibit.  Of that first page.  Sorry.

20        MS. REICHMUTH:  I think this is what

21   you're --

22        MR. PITT:  Let me see.  Let me see.

23   Could I see that again?

24        MS. REICHMUTH:  Sure.

25        MR. PITT:  I believe so.  That's right.

149

1    That's correct.

2        Q    I'm going to represent to you that -- that

3    the document behind the first page comes right out

4    of the city records regarding Ross' plans pertaining

5    to the Failing Building and its use of that space.

6    And if you look at it it looks identical, and

7    correct me if I'm wrong, to the document that is

8    Bates numbered ROS_0002888.

9        A    Okay.

10       Q    Do you see that, sir?

11       A    I see it.

12       Q    Does it look identical to you, the back

13   page, the original Ross document?  Or the previous

14   Ross document I just showed you?

15            MS. REICHMUTH:  Objection.

16   Mischaracterizes the documents.  It looks like

17   there's some small -- small differences.  I don't

18   know if it's just a -- because of the reproduction

19   of the document.

20            MR. PITT:  Okay.  Fair enough.

21       Q    Let me ask it this way:  I will represent

22   to you that the document from behind came from the

23   city records.  But more importantly, the front page

24   of this document, that I'd like to identify as

25   Exhibit No. 86.  I have blown up the notation that

150

1    exists on both of -- both these documents, I mean,

2    both Exhibit 86, as well as the first page of

3    Exhibit 85.

4              If you could read the notation that's in

5    the middle of the page on Exhibit 86.

6                        (Exhibit 86 marked

7                         for identification.)

8              THE WITNESS:  Okay.  Would you repeat

9    that, please?

10   BY MR. PITT:

11       Q     Yeah.  The first page of Exhibit 86 I have

12   blown up the notation that exists on Exhibit 85, the

13   first page of Exhibit 85.  Can you read that

14   notation?

15       A     This space vacant, no occupancy, no

16   storage, separate permit required for occupancy.

17       Q     Okay.  Is that a fair -- well, let me ask

18   you this:  Does that comport with your understanding

19   of Ross' intended use of the space?

20             MS. REICHMUTH:  Objection.  Vague and

21   ambiguous.

22   BY MR. PITT:

23       Q     Well, let me ask it this way:  As part of

24   the build out that you oversaw, is it your

25   understanding that Ross did not attempt to use the

151

1    shaded area on Exhibit 85 for occupancy, for

2    storage, and that the space was to be vacant?

3        A    Yes.  I don't believe it was Ross' intent

4    to use it.  We have access to it.  I believe there's

5    egress from it.

6        Q    Okay.  And I understand your testimony

7    that prior to that it is your understanding that

8    J.J. Newberrys utilized that space for a mercantile

9    and retail use, correct?

10           MS. REICHMUTH:  Objection.  Vague and

11   ambiguous, calls for speculation.

12           THE WITNESS:  That was my understanding.

13   That's my recollection.

14   BY MR. PITT:

15       Q    Okay.  Do you recall doing any analysis or

16   evaluation of what Ross' intended use of that

17   basement space may have on its future uses?

18           MS. REICHMUTH:  I'm sorry.  Could you read

19   back that question?

20           (Record read as follows:  Question:  Okay.
     Do you recall doing any analysis or evaluation of
21   what Ross' intended use of that basement space may
     have on its future uses?)

22

23           MS. REICHMUTH:  Objection.  Vague and

24   ambiguous, calls for speculation.

25           THE WITNESS:  In '96?

152

1           MR. PITT:  Yes.  In '96.

2           THE WITNESS:  I have no specific

3    recollection.  I would believe that we would have

4    looked -- Ross would have looked at all of the space

5    for both buildings in contemplating the final

6    layouts.

7           MR. PITT:  Okay.  Let me -- maybe I --

8    maybe I could ask you more directly.

9      Q    Do you know if Ross evaluated or

10   considered whether or not its decision to fill in

11   the floor and remove that -- to remove a portion of

12   the grand staircase and fill in that section of the

13   floor and to submit plans showing no occupancy of

14   that space would effectively prevent a mercantile or

15   retail use of that space in the future?

16          MS. REICHMUTH:  Objection.  Vague and

17   ambiguous, calls for speculation and an expert

18   opinion.

19          THE WITNESS:  Yeah.  I would have no

20   knowledge of the future aspect.

21   BY MR. PITT:

22     Q    Okay.  So is it fair to say that in

23   overseeing this project, as you testified you did,

24   that was something you did not consider?

25          MS. REICHMUTH:  Objection.  Misstates

John Haskins
Ross Dress for Less, Inc v. Makarios-Oregon, LLC

October 21, 2015
No. 3:14-cv-01971-SB

153

1  testimony, vague and ambiguous.

2       THE WITNESS:  No.  I believe I said I

3  didn't contemplate future use for the store design.

4  BY MR. PITT:

5       Q    What about future use of the space after

6  Ross leaves the space at the conclusion of its

7  lease?

8       A    In 1996?

9       MS. REICHMUTH:  Objection.  Objection.

10  Vague and ambiguous.

11       MR. PITT:  Correct.

12       THE WITNESS:  I have no recollection of

13  thinking that far ahead.

14  BY MR. PITT:

15       Q    So if I represent to you that occupancy in

16  the basement has effectively been abandoned, do you

17  have any reason to not believe that to be true?

18       MS. REICHMUTH:  Objection.  Vague and

19  ambiguous, calls for a legal conclusion, lacks

20  foundation.

21       THE WITNESS:  I wouldn't have knowledge of

22  what the jurisdictional requirements are for

23  occupancy, particularly in the future.

24  BY MR. PITT:

25       Q    Okay.  And that's a fair point.  So at the

DTI Reporting      503.808.1690

154

1    time of the build out did you, or do you have

2    knowledge of anyone from Ross conducting a

3    jurisdictional analysis of what effect Ross' build

4    out may have on a future use of this building and

5    space?

6            MS. REICHMUTH:  Objection.  Vague and

7    ambiguous and lacks foundation, asked and answered.

8            THE WITNESS:  I have no recollection of

9    the future use.  I would have assumed it's -- it was

10   retail, Ross is retail, and if Ross contemplated a

11   future use it would be retail.

12   BY MR. PITT:

13       Q    But the notation on the plans submitted to

14   the city say this space vacant, no occupancy, no

15   storage, separate permit required for occupancy.

16   You see that, correct?

17       A    I do.

18       Q    So it's fair to say Ross did not intend to

19   utilize that space in terms of storage, retail,

20   mercantile, correct?

21           MS. REICHMUTH:  Objection.  Vague and

22   ambiguous.

23           THE WITNESS:  Only at that point in time.

24   This was at the time of a construction document.  It

25   wouldn't speak to the future.

155

BY MR. PITT:

1

2    Q    Okay.  In terms of your build out though,

3    the grand staircase was removed and the first floors

4    filled in, correct?

5         MS. REICHMUTH:  Objection.  Misstates

6    testimony.

7         THE WITNESS:  I believe I've said the

8    staircase is still there.

9    BY MR. PITT:

10    Q    Okay.  Without quibbling over whether it's

11    all there or partially there, the cavity where the

12    staircase used to allow access from the first and

13    second -- the first floor, the basement is filled

14    in, it's not accessible.  Fair enough?

15    A    Correct.

16    Q    So if Ross wanted to put a mercantile or

17    retail use down there, they would have to do some

18    pretty substantial alterations, correct?

19         MS. REICHMUTH:  Objection.  Vague and

20    ambiguous, calls for speculation.

21         THE WITNESS:  I don't know what you mean

22    by "substantial."

23    BY MR. PITT:

24    Q    Well, they'd have to replace the grand

25    staircase and remove the infill from the floor and

156

1    do whatever else is required to reestablish

2    occupancy down there, correct?

3            MS. REICHMUTH:  Objection.

4            MR. PITT:  For mercantile or retail use.

5            MS. REICHMUTH:  Objection.  Lacks

6    foundation, calls for an expert opinion.

7            THE WITNESS:  Yeah.  I'm not sure what the

8    requirement would be today, but the staircase is

9    there, so it would be just probably a question of

10   removing the infill and using the stairs.

11   BY MR. PITT:

12       Q    And building up railings and appropriate

13   safety apparatus so you could actually use it as a

14   staircase, correct?

15           MS. REICHMUTH:  Objection.  Vague.

16   BY MR. PITT:

17       Q    It's not just an open cavity in the floor,

18   sir, correct?

19           MS. REICHMUTH:  Objection.  Vague and

20   ambiguous.

21           THE WITNESS:  When?

22   BY MR. PITT:

23       Q    Well, when -- prior to Ross conducting

24   it's build out in 1996, is it your testimony that

25   the grand staircase between the first floor in the

THIS SPACE VACANT
NO OCCUPANCY - NO STORAGE
SEPARATE PERMIT
REQUIRED FOR OCCUPANCY



EXHIBIT

86

Haskins 10-21-15

Exhibit A
Page 20 of 22



192

1                    CERTIFICATE OF REPORTER

2          I, DONIELLE DEL CARLO, a Certified

3    Shorthand Reporter, hereby certify that the witness

4    in the foregoing deposition was by me duly sworn to

5    tell the truth, the whole truth, and nothing but the

6    truth in the within-entitled cause;

7          That said deposition was taken down in

8    shorthand by me, a disinterested person at the time

9    and place therein stated, and that the testimony of

10   the said witness was thereafter reduced to

11   typewriting, by computer, under my direction and

12   supervision;

13         That before completion of the deposition,

14   review of the transcript [ } was [x] was not

15   requested.  If requested, any changes made by the

16   deponent (and provided to the reporter) during the

17   period allowed are appended hereto.

18         I further certify that I am not of counsel

19   or attorney for either or any of the parties to the

20   said deposition, nor in any way interested in the

21   event of this cause, and that I am not related to

22   any of the parties thereto.

23         DATED:  November 3, 2015

24         _____

25         DONIELLE DEL CARLO, CSR No. 10476