IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROSS DRESS FOR LESS, INC.**, | Case No. 3:14-cv-1971-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MAKARIOS-OREGON, LLC**, and **WALKER PLACE, LLC**, | |
| Defendants. | |

Thomas V. Dulcich and Rebecca A. Boyette, Schwabe Williamson & Wyatt, PC, 1211 S.W. Fifth Avenue, Suite 1900, Portland, OR 97204; Gregory D. Call and Tracy E. Reichmuth, Crowell & Moring, LLP, 275 Battery Street, 23rd Floor, San Francisco, CA 94111. Of Attorneys for Plaintiff.

Jeffrey M. Edelson and Molly K. Honoré, Markowitz Herbold, PC, 1211 S.W. Fifth Avenue, Suite 3000, Portland, OR 97204. Of Attorneys for Defendant Makarios-Oregon, LLC.

Darian A. Stanford and Keith A. Pitt, Slinde Nelson Stanford, 111 S.W. Fifth Avenue, Suite 1940, Portland, OR 97204. Of Attorneys for Defendant Walker Place, LLC.

**Michael H. Simon, District Judge.**

This case involves a dispute over a lessee's obligations at the expiration of two leases—negotiated with two separate landlords for two conjoined buildings—that have spanned more than 50 years. Plaintiff Ross Dress For Less, Inc. ("Ross" or "Plaintiff") is the successor in

PAGE 1 – OPINION AND ORDER

interest to the original lessee. Defendants Walker Place, LLC ("Walker Place") and Makarios-Oregon, LLC ("Makarios") (collectively, "Defendants") are the successors in interest to the original lessors. Walker Place is the owner, lessor, and landlord of the Failing Building, located in downtown Portland, Oregon. Makarios is the owner, lessor, and landlord of the adjacent Richmond Building. Ross leases the Failing Building from Walker Place under the 1956 "Failing Lease," and Ross leases the Richmond Building from Makarios under the 1956 "Richmond Lease."[1] All parties agree that the Failing and Richmond Leases will expire on September 30, 2016, and will not be renewed. A great deal of litigation has already taken place in this case, and the Court has issued several decisions concerning the condition in which Ross is obligated to return the leased premises, the Failing and Richmond Buildings.

On September 6, 2016, Ross moved for partial summary judgment. The principal question raised in Ross's motion is whether Ross may either enter or continue to remain on the premises of the Failing and Richmond Buildings after September 30, 2016, over Defendants' objections, so that Ross may complete its "building separation" obligations needed to surrender the premises in the condition required under the leases. For the reasons explained below, the Court holds that after the leases expire on September 30, 2016, neither Ross nor its agents may enter or continue to remain on the premises of the Failing or Richmond Buildings over the objections of Walker Place or Makarios, respectively. Accordingly, Plaintiff's Motion for Partial Summary Judgment Regarding Completion of End-of-Lease Work Pursuant to the Failing and Richmond Leases (ECF 219) is denied.

---

[1] The Failing and the Richmond Leases have been amended several times in ways not relevant to the pending motion.

## BACKGROUND

In December 2014, Ross commenced this lawsuit against Defendants, seeking a judicial declaration that Ross's proposed end-of-lease plans satisfy Ross's obligations under the relevant leases. Walker Place and Makarios both asserted counterclaims for a judicial declaration clarifying the extent of Ross's end-of-lease obligations and for breach of contract. On February 1, 2016, all parties filed cross motions for partial summary judgment. After reviewing the parties' submissions and hearing oral argument, the Court issued its decision (ECF 99) on March 25, 2016. *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC, et al.*, --- F. Supp. 3d ---, 2016 WL 1181677 (D. Or. March 25, 2016). Among other things, the Court held that "the leases do not require the elimination of shared lateral forces or the creation of a new 'joint' or gap between the buildings." *Id*. at *11. Shortly thereafter, the parties agreed to bifurcate their respective claims for declaratory relief ("Phase I") from Defendants' breach of contract claims for damages ("Phase II"). ECF 104.

The Court held a bench trial from May 2 to May 13, 2016, to address the issues raised in Phase I. On June 10, 2016, the Court issued its Findings of Fact and Conclusions of Law (ECF 213), interpreting the respective leases and describing the required conditions in which Ross is obligated to surrender the respective premises at the expiration of the two leases. *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC, et al.*, 2016 WL 3360678 (D. Or. June 10, 2016). Among other things, the Court held that Ross's "proposal for a gypsum wall was a cost-cutting measure that does not comply with the requirement for masonry curtain walls as provided for in the two leases." *Id*. at *19.

The Court also held that, among other things: (1) the "leases do not require Ross to slice the floors and columns and remove the 19 to 28 inches of concrete between the buildings"; (2) "[w]ith sufficiently durable exterior walls separating the buildings, the buildings may

PAGE 3 – OPINION AND ORDER

continue to have conjoined features and yet comply with the intent of the original parties"; (3) "the 1956 leases require removing the connection between the escalator beams that span the property line [and] [t]o the extent that severing the escalator beams requires supporting the severed beams in order to ensure the structural integrity of the buildings, the leases require the tenant to complete that work"; (4) Ross must maintain and return the third through fifth mezzanine floors of the Richmond Building in "good order, condition, and repair" reasonable wear and tear excepted; (5) Ross "is obligated to return the [Failing Building's] sidewalk vaults in good order, condition, and repair, reasonable wear and tear excepted"; and (6) Ross "is obligated to surrender only the internal portion of the vent stack within the second floor of the Failing Building in good order, condition, and repair, reasonable wear and tear excepted." *Id*. at *20-27. The Court also interpreted the meaning of "good order, condition, and repair, except for reasonable wear and tear," as that phrase is used in the two leases. *Id*. at *30-31. The Court's Findings of Fact and Conclusions of Law at Phase I were intended by the Court to provide Ross with sufficient guidance to be able timely to meet its obligations to surrender the Failing and Richmond Buildings in the condition required under the two leases by September 30, 2016, when the two leases expire.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

PAGE 4 – OPINION AND ORDER

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## DISCUSSION

On September 6, 2016, 24 days before the expiration of the two leases, Ross filed the pending motion for partial summary judgment.[2] ECF 219. In support of its motion, Ross states that, among other things:

> Ross wants to do the work required under the Leases. Since this Court issued its Findings of Fact and Conclusions of Law (Dkt 213) (the "Order") regarding Phase I of this litigation, Ross has continued to work towards complying with the Leases as outlined in the Order, including preparing updated plans and submitting those plans for review by the City of Portland. However, after having argued that Ross is solely obligated to do everything required under "triple net" Leases, including maintenance, renovations, and extensive separation work, Landlords now seek to block that work. In particular, Landlords have expressly stated that (1) they will not consent to the work set forth in the plans – despite the fact that the parties have already litigated those issues; and (2) ***they will not permit Ross to have access to the Richmond and Failing Buildings to complete the work after September 30***, despite the fact that the Landlords' interference both prior to and after the filing of this action has made it impossible to complete the work prior to September 30.

ECF 219 (emphasis added). Defendants deny that they have interfered with Ross's efforts to complete its required work, but Defendants agree that they will not permit Ross or its agents to have access to the Failing and Richmond Buildings after September 30, 2016. Thus, the principal

---

[2] During a status conference with the Court on August 25, 2016, Ross stated that it anticipated filing this motion.

PAGE 5 – OPINION AND ORDER

question to be addressed by the Court in resolving Ross's motion for partial summary judgment is whether, notwithstanding the Defendants' objections, the respective leases allow Ross and its agents to continue to perform end-of-lease "building separation" work at the Failing and Richmond Buildings after September 30, 2016. To answer this question, the Court begins with the relevant provisions of the respective leases and Oregon law governing the interpretation of contracts, including leases.

## A. Contract Interpretation Under Oregon Law

In this case based on diversity jurisdiction, Oregon's substantive law governs. *See Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008) (noting in a case involving contract interpretation that "[b]ecause federal jurisdiction in this case is based on diversity of citizenship, we apply the substantive law of the state"). In addition, because the resolution of the parties' dispute turns upon the interpretation of the parties' leases, ordinary principles of contract interpretation apply. *Harold Schnitzer Props. v. Tradewell Grp., Inc.*, 104 Or. App. 19, 23 (1990) ("Oregon treats a commercial lease as a contract and, in the absence of a provision in the lease to the contrary, ordinary contract principles apply.").

Under Oregon law, the "central issue" in interpreting a lease is "the intent of the parties *at the time of the execution of the lease*." *Stark St. Props., Inc. v. Teufel*, 277 Or. 649, 658 (1977) (emphasis added); *see also Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1165 (9th Cir. 2015) ("'The fundamental goal of contract interpretation is to give effect to the mutual intent of the parties *as it existed at the time of contracting*.' This fundamental axiom is widely accepted and uncontested.") (citation omitted) (emphasis in original).

The leading case in Oregon on contract interpretation continues to be *Yogman v. Parrott*, 325 Or. 358 (1997). In *Yogman*, the Oregon Supreme Court established a three-step process for

PAGE 6 – OPINION AND ORDER

interpreting a disputed contractual provision. First, the court must determine whether, as a matter of law, the disputed provision is ambiguous. *Id.* at 361. A contractual provision is ambiguous if it can "reasonably be given more than one plausible interpretation." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011). "The court must, if possible, construe the contract so as to give effect to all of its provisions." *Id.* Further, when construing a contract provision, the court is advised "not to insert what has been omitted, or to omit what has been inserted." Or. Rev. Stat. ("ORS") § 42.230; *see also Yogman*, 325 Or. at 361 (citing ORS § 42.230 at step one of the *Yogman* analysis).

The analysis ends if the meaning of the provision is clear from the text and context of the contract. *Williams*, 351 Or. at 379-80. The court then applies the contractual term to the facts. *See Yogman*, 325 Or. at 361. If the provision is ambiguous, however, the court proceeds to the second step. *Id.* at 363. At the second step, the trier of fact examines extrinsic evidence of the contracting parties' intent and construes the disputed contractual provision consistent with that intent, if such a resolution can be determined. *Id.* Oregon follows the objective theory of contracts, and relevant evidence at step two may include actual "manifestations of intent, as evidenced by the parties' communications and acts." *Holdner v. Holdner*, 176 Or. App. 111, 120 (2001) (quotation marks omitted). If, after examining extrinsic evidence, the contract is still ambiguous, the court applies appropriate maxims of construction at the third step. *Yogman*, 326 Or. at 364.

Oregon courts have generally held that summary judgment is inappropriate when the trial court finds an ambiguity at step one of the *Yogman* analysis. *See, e.g.*, *Dial Temp. Help Serv., Inc. v. DLF Int'l Seeds, Inc.*, 255 Or. App. 609, 611 (2013) (the "general rule" is that the meaning of a contract may be disposed of by way of summary judgment only if its terms are

PAGE 7 – OPINION AND ORDER

unambiguous); *PGF Care Ctr., Inc. v. Wolfe*, 208 Or. App. 145, 151 (2006) ("Disputes over the meaning of a contract provision may not be disposed of by summary judgment if the provision is ambiguous."). Oregon courts have, however, also clarified that "it [is] not the ambiguity of the contract that render[s] summary judgment inappropriate, but that the ambiguity represent[s] a dispute over a genuine issue of material fact." *Dial*, 255 Or. App. at 611.

Thus, there exist "at least two circumstances in which the 'general rule' [that summary judgment is inappropriate after step one of *Yogman*] does not apply." *Id.* at 612. *Yogman* itself recognizes the first of these circumstances. Summary judgment may be appropriate after step one of the *Yogman* analysis if "[t]he parties agree that no additional evidence of the contracting parties' intent is available beyond what is in the summary judgment record." *Yogman*, 325 Or. at 364. "[W]hen there is no relevant extrinsic evidence to resolve the ambiguity[,] . . . the court can, on summary judgment, determine the contract's meaning by applying appropriate maxims of construction." *Madson v. W. Or. Conf. Ass'n of Seventh-Day Adventists*, 209 Or. App. 380, 389 n.3 (2006) (citing *Yogman*). Thus, summary judgment is appropriate if "despite the ambiguity, no genuine issue of material fact remain[s] to be tried." *Dial*, 255 Or. App. at 612. The second circumstance arises when "the party that b[ears] the burden of presenting evidence to establish the existence of a genuine issue of material fact has failed to do so." *Id.*

### B. The Relevant Provisions of the Failing and Richmond Leases

#### 1. The 1956 Failing Lease

At paragraph (f) under the heading "Lessee's covenants," the 1956 Failing Lease provides that the Lessee covenants and agrees:

> (f) ***That it will at the expiration of the term hereof, or at the earlier termination of this lease surrender the premises to the Lessors*** or those having their estate therein in the same condition as that in which the Lessee is, by the terms of this lease, obligated

> to put the premises, reasonable use and wear thereof, and damage due to fire, alone excepted.

ECF 61-2 (emphasis added). In addition, under the heading "Severance," the 1956 Failing Lease provides in relevant part:

> ***The Lessee agrees that, prior to the expiration of this lease or, in the event of termination of this lease for any reason whatsoever, promptly after such termination***, it will at its sole cost and expense do and perform such work as shall be necessary to physically separate, and constitute entirely independent and self-sufficient, the demised premises from the adjacent "Richmond Building" premises. . . .

*Id.* (emphasis added). The Court generally refers to this Severance provision as Ross's "building separation" obligation under the Failing Lease.

### 2. The 1956 Richmond Lease

Article 16 of the 1956 Richmond Lease is captioned "Surrender of Premises." It contains two parts, Section 16.01 and Section 16.02. In Section 16.01, the Richmond Lease provides in relevant part:

> ***The Tenant shall, upon the expiration or termination of this lease for any reason whatsoever, surrender to the Landlord the buildings, structures and building equipment then upon the demised premises***, together with all alterations and replacements thereof then on the demised premises, in good order, condition and repair, except for reasonable wear and tear; provided, however, that if the Tenant shall have made any alteration or alterations adapting the buildings, structures and building equipment upon the demised premises for multiple occupancy, then, in such event, prior to the expiration or termination of this lease, the Tenant, at the Landlord's request, shall restore said buildings, structures and building equipment to the order and condition which existed prior to such alteration or alterations. . . .

ECF 61-1 (emphasis added). In Section 16.02, this lease provides:

> ***The Tenant agrees that, prior to the expiration of this lease or, in the event of termination of this lease for any reason whatsoever, promptly after such termination, the Tenant, at the Tenant's sole cost and expense, shall make such alterations to the building***

PAGE 9 – OPINION AND ORDER

> ***then erected on the demised premises as shall be necessary to constitute such building an entirely independent and self-sufficient structure***. Such alterations shall include, without in any way limiting the generality of the foregoing, the removal of escalators, the construction of footings and a masonry curtain wall along the westerly boundary line of the demised premises, the removal of any facing encroaching upon adjoining premises, the removal of signs, the relocation of plumbing, drain pipes, sprinklers, electrical wiring, lighting fixtures and exhaust ducts, the installation of a new soil connection to the city sewer, a new steam connection and new electrical service conduits and equipment and provision for a new toilet and rest room. ***The provisions of this Section 16.02 shall survive the expiration or any termination of this lease***.

*Id.* (emphasis added). The Court generally refers to Section 16.02 as Ross's "building separation" obligation under the Richmond Lease.

## C. The Parties' Arguments

### 1. Plaintiff's Position

The first premise of Ross's argument is that under both the Richmond Lease and the Failing Lease, expiration is a form, or type, of termination. Ross identifies several provisions in each lease to support this conclusion. Section 9.03 of the Richmond Lease provides the strongest support for Ross's position. That section provides, in relevant part:

> All alterations made by the Tenant shall immediately be and become part of the realty and the sole and absolute property of the Landlord and shall remain upon and be surrendered with the demised premises ***at the expiration or other termination of this lease***.

ECF 61-1 (emphasis added). Ross argues that the word "other," which modifies the word "termination," would be unnecessary—and even inappropriate—unless expiration is a type of termination under this lease. In addition, Section 6.02 of the Richmond Lease provides, in relevant part:

> The Tenant covenants and agrees to pay, and to indemnify the Landlord against, all legal costs and charges, including counsel

PAGE 10 – OPINION AND ORDER

> fees, lawfully and reasonably incurred in obtaining possession of the demised premises after default of the Tenant ***or upon expiration or earlier termination of the demised term***, or in enforcing any covenant or agreement of the Tenant herein contained.

ECF 61-1 (emphasis added). Ross also argues that the word "earlier," which modifies the word "termination," would be unnecessary unless expiration is a type of termination under the Richmond Lease.

Ross makes a similar argument concerning the Failing Lease at paragraph (f) of the section captioned "Lessee's covenant's." In relevant part, paragraph (f) provides that "at the expiration of the term hereof, or at the earlier termination of this lease," the lessee shall surrender the premises to the Lessors. Again, Ross argues that the word "earlier," which modifies the word "termination," would be unnecessary unless expiration is a type of termination under the Failing Lease.

In support of its argument, Ross relies on the principle of contract interpretation under Oregon law that provides when construing a contract provision, the court is "not to insert what has been omitted, or to omit what has been inserted." ORS § 42.230; *see also Yogman*, 325 Or. at 361 (citing ORS § 42.230 at step one of the analysis). Ross argues that the Court should not ignore, or omit, the words "other" or "earlier" when construing the Richmond and Failing Leases.

For the second premise of its argument, Ross begins with the text of Section 16.02 of the Richmond Lease. The relevant text provides:

> The Tenant agrees that, prior to the expiration of this lease ***or, in the event of termination of this lease for any reason whatsoever, promptly after such termination,*** the Tenant, at the Tenant's sole cost and expense, shall make such alterations to the building then erected on the demised premises as shall be necessary to constitute such building an entirely independent and self-sufficient structure. . . .

PAGE 11 – OPINION AND ORDER

ECF 61-1 (emphasis added). Building on the first premise, Ross asserts that an event of termination under this section could include expiration. Ross then notes that the clause "for any reason whatsoever" modifies "event of termination," which Ross argues further supports its conclusion that expiration could be an event of termination.

From these two premises, Ross concludes that Section 16.02 of the Richmond Lease, which allows Ross to complete its building separation obligations described in that section "promptly after such termination," must be read as allowing Ross to complete its building separation obligations "promptly after" the expiration of the lease. In other words, Ross asserts, it may complete its Section 16.02 building separation obligations in the Richmond Building "promptly after" the Richmond Lease expires on September 30, 2016.

Ross reaches the same conclusion under the Failing Lease. Under the heading "Severance," the Failing Lease states, in relevant part:

> The Lessee agrees that, ***prior to the expiration of this lease or, in the event of termination of this lease for any reason whatsoever, promptly after such termination***, it will at its sole cost and expense do and perform such work as shall be necessary to physically separate, and constitute entirely independent and self-sufficient, the demised premises from the adjacent "Richmond Building" premises."

ECF 61-2. Thus, according to Ross, under the Failing Lease, Ross may complete its building separation obligations in the Failing Building "promptly after" the Failing Lease expires on September 30, 2016.

### 2. Defendants' Position

Both Walker Place and Makarios respond that Ross's interpretation of the words "expiration" and "termination" renders unnecessary, or meaningless, the phrase "prior to the expiration of this lease," as that phrase is found both in the Severance provision in the Failing Lease and in Section 16.02 of the Richmond Lease. Defendants argue that it would be

PAGE 12 – OPINION AND ORDER

meaningless for either lease to include a requirement that Ross, as Lessee or Tenant, complete the required building separation work *prior to the expiration* of the lease if the lease also permitted the Lessee or Tenant, at its option or election, instead to complete that same building separation work "promptly after" any termination, including expiration.

If Ross's interpretation of the two leases were correct, according to Defendants, the relevant leases would simply require the Lessee or Tenant to complete the required building separation work not later than promptly after the termination of the lease. As was the case in Ross's argument, Walker Place and Makarios rely upon that aspect of Oregon's law of contract interpretation that provides that the court is not "to omit what has been inserted." ORS § 42.230. Defendants argue that if Ross's interpretation of the leases were accepted, the effect would be to omit (or render meaningless) the clause "prior to the expiration of this lease" that is contained in each lease. Because a court should not interpret a contract in such a way that omits or renders meaningless a term or phrase in the contract, Defendants argue, Ross's proposed interpretation of the leases should be rejected.

Walker Place and Makarios instead urge the Court to interpret the Severance provision in the Failing Lease and Section 16.02 in the Richmond Lease as reading, in essence, that the Lessee or Tenant must complete the required building separation work either before the expiration of the lease or, if the lease terminates *before* expiration, then promptly after such termination. In other words, both Ross and Defendants interpret the word "expiration" in its normal and ordinary fashion and agree that the two leases expire on September 30, 2016. Defendants, however, contrary to Ross, interpret the word "termination" as used in the two leases as referring to a termination that occurs *before* expiration. Thus, Defendants'

PAGE 13 – OPINION AND ORDER

interpretation excludes any definition of "termination" that results in expiration being a type of termination.

As discussed previously, Ross argues that Defendants' construction is inappropriate because it inserts "what has been omitted," in violation of ORS § 42.230. Ross also argues that Defendants' construction would render meaningless the "Survival Clause" that appears in both leases. The final sentence in Section 16.02 in the Richmond Lease states, "The provisions of this Section 16.02 shall survive the expiration or any termination of this lease." The final sentence in the Severance provision of the Failing Lease similarly states, "The provisions of this section shall survive the expiration of [*sic*] [or] termination of this lease."

Both leases envision the possibility of termination before expiration. In such an event, both leases require the Lessee or Tenant to complete its building separation obligations promptly after such termination. To that extent, when the Survival Clause uses the word "termination," it is not meaningless or unnecessary under Defendants' construction. It is needed precisely in case the lease terminates before expiration and the Lessee or Tenant did not complete its building separation obligations promptly thereafter.

Ross, however, argues that under Defendants' construction, the word "expiration" is meaningless or unnecessary in the Survival Clause. Ross argues that if lease expiration is the final date for the Tenant or Lessee to complete its building separation obligations, there would be no need for a "Survival Clause." According to Ross, if the Tenant or Lessee has completed its building separation obligations by the time of lease expiration, there is nothing that needs to "survive." If, however, the Tenant or Lessee has not completed its building separation obligations by the time of lease expiration, Ross argues, there is already a breach of contract under Defendants' construction, and there is again nothing that needs to "survive" because a

PAGE 14 – OPINION AND ORDER

party may always sue for damages caused by a breach of contract even without a "Survival Clause." Defendants respond by arguing, among other things, the Survival Clause in the Severance and Section 16.02 may have been the consequence of a cautious draftsperson wanting to preserve the possibility of the Landlords being able to request specific performance.

The Court need not resolve this particular point, in part because Ross's argument appears to "prove too much." Under Ross's construction that "expiration" is a form of "termination," the use of the word "expiration" in the "Survival Clause" becomes unnecessary. If Ross's construction were correct, it would be sufficient for the Survival Clause in the Richmond Lease simply to read: "The provisions of this Section 16.02 shall survive any termination of this lease," and similarly for the Failing Lease. Thus, Ross's construction renders meaningless or unnecessary the words "the expiration or" as found in the Survival Clause, yet this would violate Oregon's rules of construction. Indeed, if Ross's construction of "expiration" as a type of "termination" were accepted, that would render every instance in the two leases that uses both words together unnecessary because "expiration" could have been deleted and "termination" used by itself in all places.

**D. Analysis**

It appears that the maxim of contract construction stated in ORS § 42.230 will be violated whichever interpretive path the Court chooses. That statute advises the Court "not to insert what has been omitted, or to omit what has been inserted." If Defendants' construction of "expiration" and "termination" were accepted, it would appear that the Court would be omitting, ignoring, or rendering meaningless several instances of the words "earlier" or "other" as found in the leases. On the other hand, if Plaintiffs' construction of "expiration" and termination" were accepted and expiration were considered to be a type of termination, it would appear that the Court would be omitting, ignoring, or rendering meaningless numerous instances of the word "expiration" as

PAGE 15 – OPINION AND ORDER

well as other phrases in the leases. If expiration were a type of termination, it would be unnecessary to use "expiration" in the leases because simply using "termination" in all places would suffice. Thus, the Court finds that the terms "expiration" and "termination" are ambiguous as they are used in the Failing and Richmond Leases. The Court further finds that adherence to the interpretive maxim set forth in ORS § 42.230 will not resolve the dispute over how to interpret the text "promptly after termination" as contained in the Severance provision of the Failing Lease and in Section 16.02 of the Richmond Lease. *See generally* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 59 (2012) (stating Canon 3 as "No canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions.").[3]

      No party has cited any extrinsic evidence relevant to the pending dispute or even indicated the likelihood that any such extrinsic evidence exists. Thus, there is no genuine issue of fact that requires resolution at step two of *Yogman*. *See Madson*, 209 Or. App. at 389 n.3 ("[W]hen there is no relevant extrinsic evidence to resolve the ambiguity[,] . . . the court can, on summary judgment, determine the contract's meaning by applying appropriate maxims of construction") (citing *Yogman*). Thus, the Court turns to step three of *Yogman*.

---

      [3] Even if the Court were to interpret the leases as Ross urges, the relevant text in both leases only allows Ross to complete the necessary building separation work "promptly after such termination." ECF 61-1 and 61-2. The adverb "promptly" means "in a prompt manner; at once; immediately; quickly." *Webster's Third New International Dictionary* 1816 (2002). During oral argument, Ross explained that its building separation work in the Richmond and Failing Buildings might not be completed until December 2016 or even sometime in 2017. Whether such a timeframe would satisfy the requirement that such work be completed "promptly" after September 30, 2016, raises an additional issue of contract interpretation. In light of the Court's ruling on the pending motion, however, the Court need not resolve that issue.

PAGE 16 – OPINION AND ORDER

The maxim of construction that appears to be the most applicable, and the one that appears to be the most capable of breaking the logjam, is found at ORS § 42.260. That statute provides, in relevant part:

> When different constructions of a provision are otherwise equally proper, that construction is to be taken which is most favorable to the party in whose favor the provision was made.

ORS § 42.260. *See Copeland Sand & Gravel, Inc. v. Estate of Dillard*, 267 Or. App. 791, 799 (2014) (applying ORS § 42.260 to resolve an ambiguity by accepting the construction of a provision that is most favorable to the party in whose favor the provision was made); *see also Heine v. Bank of Oswego*, 144 F. Supp. 3d 1198, 1214-15 (D. Or. 2015) (same).

Both the Severance provision in the Failing Lease and Section 16.02 in the Richmond Lease require the Lessee or Tenant, upon the expiration or termination of the respective lease, to perform certain building separation work as directed in those provisions. Moreover, those provisions also direct that this work shall be done at the Lessee's or Tenant's "sole cost and expense." There is no benefit, apart from fulfilling its contractual obligation, that could possibly accrue to the Lessee or Tenant from performing this work at the Lessee's or Tenant's sole expense upon the expiration or termination of the lease. Thus, both the Severance provision in the Failing Lease and Section 16.02 in the Richmond Lease are provisions made in favor of the building owners or landlords, namely Defendants. Because ORS § 42.260 advises the Court, when confronted with equally proper but incompatible constructions, to select the version that is most favorable to the party in whose favor the disputed provision was made, Defendants' construction prevails.

Ross, however, argues that Ross is the party in whose favor the ambiguous provision was made. Ross asserts that both the Severance provision and Section 16.02 give Ross the option to complete its building separation work either before lease expiration or promptly after lease

PAGE 17 – OPINION AND ORDER

termination. Thus, according to Ross, because the provision gives Ross the choice, the provision must have been made in favor of Ross and, thus, Ross's construction should prevail.

Ross, however, has committed the logical fallacy of circular reasoning, or "begging the question," where the conclusion simply assumes the answer. The "proof" in a circular argument is not a conclusion that is logically drawn from the premises of the argument. Instead, the conclusion is derived from a premise that assumes the conclusion.

The fallacy of "begging the question" or "circular argument," more formally known as the fallacy of *petitio principii* (literally, assuming the initial point), results from assuming in the premises that which is sought to be proven in the conclusion. As explained in PAUL BOSANAC, LITIGATION LOGIC: A PRACTICAL GUIDE TO EFFECTIVE ARGUMENT (2009):

> Circular argument, circular reasoning, *petition principii*, vicious circle—each is another name for begging the question.
>
> One way to recognize this argument is to focus on the proof for the asserted conclusion. Has independent evidence sufficient to establish the conclusion been demonstrated? Or, has there merely been a reassertion or restatement of the conclusion, using other words, presumed to be true, to describe the conclusion? Isolating proof from the conclusion is not always a simple task.

*Id*. at 293; *see generally* RUGGERO J. ALDISERT, LOGIC FOR LAWYERS: A GUIDE TO CLEAR LEGAL THINKING, 201-07 (1989); *Roberts v. Legacy Meridian Park Hosp., Inc.*., 97 F. Supp. 3d 1245, 1252 (D. Or. 2015) (explaining the logical fallacy of circular reasoning).

Ross is assuming that its construction of the contractual provision in dispute is correct, which would then allow Ross the option of completing its building separation work either before September 30, 2016, or promptly thereafter. Based upon this assumption, Ross concludes that the disputed provision must have been made in favor of Ross. Therefore, argues Ross, because the disputed provision was made in favor of Ross, its construction of the disputed provision, rather than Defendants' construction, should be accepted by the Court. The circular reasoning evident

PAGE 18 – OPINION AND ORDER

in Ross's argument is that its premise assumes that Ross's construction, and not Defendants' alternative construction, should be accepted. If the Court assumes neither Ross's construction nor Defendants' construction, but simply looks to the nature of the work required under the Severance provision and Section 16.02, including who must pay for that work, the only reasonable conclusion that may be drawn is that those provisions were made for the benefit of the owners or landlords of the buildings, namely Defendants.

In ORS § 42.260, the Oregon legislature provides a fair mechanism for resolving a tie between two equally proper but incompatible constructions of a disputed contractual provision. The rule provides, in essence, that a tie goes to the runner. In this case, the runners are Defendants, Walker Place and Makarios.

## CONCLUSION

Plaintiff's Motion for Partial Summary Judgment Regarding Completion of End-of-Lease Work Pursuant to the Failing and Richmond Leases (ECF 219) is DENIED. Walker Place, LLC's Motion in the Alternative for Appointment of Special Master (ECF 217) is DENIED AS MOOT.

**IT IS SO ORDERED**.

DATED this 27th day of September, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge