# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROSS DRESS FOR LESS, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **MAKARIOS-OREGON, LLC**, <br><br> Defendant. | Case No. 3:14-cv-1971-SI <br><br> **OPINION AND ORDER** |

Thomas V. Dulcich, Joel A. Parker, and Rebecca A. Boyette, SCHWABE WILLIAMSON & WYATT, PC, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204; Gregory D. Call and Tracy E. Reichmuth, CROWELL & MORING, LLP, 3 Embarcadero Center, 26th Floor, San Francisco, CA 94111. Of Attorneys for Plaintiff.

Jeffrey M. Edelson, Molly K. Honoré, Dallas S. DeLuca, and Paul S. Bierly, MARKOWITZ HERBOLD, PC, 1211 SW Fifth Avenue, Suite 3000, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Ross Dress For Less, Inc. ("Ross" or "Plaintiff"), has moved for summary judgment against the three supplemental counterclaims asserted by Defendant Makarios-Oregon, LLC ("Makarios"). These counterclaims relate to Ross' lease of commercial space in the Richmond Building, located in downtown Portland. Under a 1956 lease and its amendments (the "Richmond Lease") (ECF 61-1), Ross was the successor-in-interest to the original lessee, and

PAGE 1 – OPINION AND ORDER

Makarios was the successor-in-interest to the original lessor. The lease expired on September 30, 2016, and Ross vacated the premises on or about that date.

Makarios' first and second counterclaims allege that Ross failed to return the premises in the condition required under the Richmond Lease, causing Ross to be in breach of the lease and its implied covenant of good faith. Makarios' third counterclaim seeks to recover unpaid rent for a 21-month period before September 30, 2016. Ross asserts that it recently learned that Makarios is not, and never has been, the owner of the Richmond Building. Instead, since at least June 30, 2011, the legal owners of the Richmond Building have been Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris, as tenants-in-common. Ross's motion for summary judgment against Makarios' first two counterclaims asks the Court to determine whether Makarios (as opposed to Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris) is entitled to recover any damages on those claims. Ross also moves against Makarios' third counterclaim on other grounds. In the alternative, Ross seeks leave to add Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris as additional defendants in Ross' claim for declaratory relief. For the reasons that follow, Ross' motion for summary judgment against Makarios' supplemental counterclaims is denied, and Ross' alternative motion for leave to add Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris as additional defendants is conditionally granted.

**BACKGROUND**

**A. Procedural History**

This case involves a dispute over a lessee's obligations upon the expiration of two leases, negotiated with two separate landlords for two conjoined buildings located in downtown Portland, Oregon. One building was known as the "Richmond Building." The other was known as the "Failing Building." The leases spanned more than 50 years and, after several extensions

and amendments, expired on September 30, 2016. Ross was the successor-in-interest to the original lessee of both buildings. Makarios and Walker Place, LLC ("Walker Place") were the successors-in-interest to the original lessors of the Richmond Building and the Failing Building, respectively.

In December 2014, Ross filed this lawsuit to obtain a judicial declaration that Ross' proposed end-of-lease plans would satisfy Ross' obligations under the relevant leases. Makarios and Walker Place asserted counterclaims, seeking a judicial declaration clarifying the extent of Ross' end-of-lease obligations and money damages for breach of contract. All three parties moved for partial summary judgment, which the Court granted in part and denied in part on March 25, 2016. *Ross Dress For Less, Inc. v. Makarios-Oregon, LLC*, 180 F. Supp. 3d 745 (D. Or. 2016). The parties then agreed to bifurcate this lawsuit. In Phase I, the Court held a bench trial to determine the extent of Ross' end-of-lease obligations, resulting in the Court's written Findings of Fact and Conclusions of Law, issued on June 10, 2016. *Ross Dress for Less, Inc. v. Makarios-Oregon*, LLC, 191 F. Supp. 3d 1189 (D. Or. 2016).

On September 6, 2016, Ross moved for an order determining whether Ross, over the objections of Makarios and Walker Place, may remain on the premises of the two buildings after the leases expire in order to complete the work needed to surrender the premises in the condition required under the leases. On September 27, 2016, the Court ruled that after the leases expire on September 30, 2016, neither Ross nor its agents may enter or remain on the premises of the Richmond Building or the Failing Building over the objection of either Makarios or Walker Place, respectively. *Ross Dress for Less, Inc. v. Makarios-Oregon, LLC*, 210 F. Supp. 3d 1259 (D. Or. 2016). On April 3, 2017, both Makarios and Walker Place filed supplemental

counterclaims against Ross, to be resolved in Phase II. Several months later, Ross and Walker Place settled their dispute, and Walker Place is no longer a party in this lawsuit.

Makarios asserts three supplemental counterclaims. As its first Phase II counterclaim, Makarios asserts that the Richmond Lease expired on September 30, 2016 and that Ross vacated the Richmond Building on or around that date but failed to return the premises in the condition required under the Richmond Lease. As stated in its first counterclaim, Markarios alleges breach of contract and seeks money damages for:

> (a) "costs of the required work and repairs, architectural, engineering, and other professional fees, legal fees, permit fees, inspection fees, and fees and costs associated with bringing the Richmond Building to the condition required by the Richmond Lease"; and
>
> (b) "lost rental income and damage to the reputation of the Richmond Building due to the dilapidated condition plaintiff left the Richmond Building, along with damages for delays to make the Richmond Building tenantable resulting from plaintiff's conduct."

ECF 242, ¶¶ 11-12 (Supplemental Counterclaims). As its second counterclaim, Makarios alleges breach of the implied covenant of good faith and fair dealing and seeks "damages in an amount to be proved at trial." ECF 242, ¶ 19.

As its third counterclaim, Makarios alleges breach of a contract to pay rent and seeks an award of $48,166.61. This amount reflects unpaid rent of $2,333.33 per month for approximately 21 months, during which Ross occupied the leased premises in the Richmond Building and tendered rent, but Makarios declined to accept those payments. At the time, Makarios was litigating in state court its claim of forcible entry and detainer ("FED"), seeking to evict Ross from the Richmond Building. Makarios asserts that it refused to accept Ross' tender of rent payments while the FED matter was being litigated in order to avoid potentially waiving

PAGE 4 – OPINION AND ORDER

Makarios' claim to evict Ross. Although Makarios lost its FED action at the state trial court, that matter is currently on appeal to the Oregon Court of Appeals.

**B. Ownership of the Richmond Building**

    **1. The Richmond Building through the End of 2011**

At some point before 2002, William Calomiris appears to have been the owner of the Richmond Building. In 2002, after his passing, personal representative deeds were recorded to transfer title of the Richmond Building to Mary Calomiris and her four children, George, Charles, Katherine, and Jenifer, as trustees of the William Calomiris Marital Trust Under the Will of William Calomiris. ECF 261-5 at 30-34. On June 17, 2011, the four Calomiris children transferred their interests to their mother, Mary Calomiris. *Id*. at 21-22. On June 30, 2011, Mary Calomiris deeded her interest to three of her children, Charles, Katherine, and Jenifer, as tenants in common, each with a one-third share. *Id*. at 17-18. According to the deed records, Makarios-Oregon, LLC never owned the Richmond Building.

Makarios' only legal interest in the Richmond Building arose under a July 27, 2011 Assignment and Assumption Agreement (the "Assignment and Assumption Agreement"). This document was entered into among Mary Calomiris, Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris (collectively, "Assignor"), on the one hand, and Makarios-Oregon, LLC ("Assignee") on the other. In relevant part, the Assignment and Assumption Agreement provides:

> Assignor, by and through Makarios, LLC[1] which is owned by Assignor, hereby transfers, conveys, and assigns to Assignee [Makarios-Oregon, LLC] *all of their right, title, and interest in, to and under the Leases and Security Deposits* with respect [the Richmond Building] 600 SW 5th Avenue, Portland, OR, as such property is more particularly described in Exhibit A, to Assignee,

---

[1] Makarios LLC appears to be a separate legal entity from Makarios-Oregon, LLC.

PAGE 5 – OPINION AND ORDER

>  including, all but not limited to, all rights, obligations, claims, and causes of actions.

ECF 261-6 at 1 of 5. Thus, Makarios-Oregon, LLC never acquired any ownership interest in the Richmond Building, only an assignment of the leases and security depositions related to that building.

### 2. Makarios-Oregon, LLC's Representations about the Richmond Building

On numerous occasions, both in this lawsuit and in the state court FED action, Makarios represented that it was the owner of the Richmond Building. On May 26, 2015, Makarios represented in its Commercial Eviction Complaint, filed in the FED action in Oregon state court, that Makarios-Oregon, LLC "is the owner of the Richmond Building." ECF 261-14 at 1. On February 1, 2016, in its motion for partial summary judgment in this federal action Makarios asserted that Makarios-Oregon, LLC "owns" the Richmond Building. ECF 57 at 6. On April 15, 2016, in its proposed findings of fact and conclusions of law, submitted after the Phase I bench trial in this action, Makarios represented that the "Richmond Building is owned by defendant Makarios-Oregon, LLC." ECF 139 at 4. Makarios added that Makarios-Oregon, LLC "is an Oregon limited liability company, owned by members of the Calomiris family." *Id*. Also on April 15, 2016, in its Phase I trial brief, Makarios represented that Makarios-Oregon, LLC is the "current owner" of the Richmond Building. ECF 162 at 8.[2]

### 3. The Sale of the Richmond Building in 2017

On March 15, 2017, Makarios-Oregon, LLC signed a letter of intent with Mortenson Development, Inc. ("Mortenson"), reciting the terms under which Makarios would sell the Richmond Building to Mortenson or its assigns for $4.5 million. ECF 261-2. When the final

---

[2] In addition, on October 17, 2016, Makarios' counsel stated to the City of Portland: "I represent Makarios-Oregon, LLC, the 100% owner of the Richmond Building at 601 SW Fourth Avenue." ECF 261-1 at 1.

purchase agreement was signed, however, which resulted in the sale of the Richmond Building to Mortenson for $4.5 million, the sellers were identified as Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris, not Makarios-Oregon, LLC. ECF 261-3. Also, the statutory warranty deed for the Richmond Building, dated September 22, 2017, identified the grantors as Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris. ECF 261-4.

Even before title was formally transferred by Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris to Mortenson, Mortenson entered into an agreement on August 23, 2017, to sell the Richmond Building for $5.25 million to Edmund Eliott LLP, an entity owned by Brandon Anderson, a principal of Walker Place. ECF 261-13 at Tr. 4:8-11; 93:21-94:23. On September 19, 2017, title to the Richmond Building was transferred from a Mortenson-related entity to an Anderson-related entity. ECF 261-5 at 1.[3] After the sale documents for the Richmond Building were recorded, they were produced in discovery to Ross. Ross states that it first discovered in December 2017 that Makarios never owned the Richmond Building. ECF 259 at 9.

## DISCUSSION

Before the Court is (1) Ross' motion for summary judgment against Makarios' supplemental counterclaims and (2) Ross' alternative motion to add the three Calomiris family members, Charles W. Calomiris, Jenifer Calomiris, and Katherine Calomiris Tompros, as parties in this action. For the reasons that follow, Ross' motion for summary judgment is denied, but

---

[3] In 2017, Anderson extended an offer to Charles Calomiris to buy the Richmond Building for slightly more than $6 million, but that offer was rejected. ECF 261-13 at Tr. 35:24-36:23.

PAGE 7 – OPINION AND ORDER

Ross' alternative motion for leave to add Charles W. Calomiris, Jenifer Calomiris, and Katherine Calomiris Tompros as defendants is granted.

## A. Ross' Motion Against Makarios' First and Second Counterclaims

Ross' argument for summary judgment against Makarios's first and second supplemental claims is that because Makarios never owned the Richmond Building, Makarios could not have suffered *any* damages caused by Ross' alleged failure to return the Richmond Building at the expiration of the lease in the condition demanded by the lease. ECF 259 at 13-18. As Ross clarified in its reply brief,

> The measure of damages is not an issue raised in the Ross motion; *Ross asks the Court to determine whether Makarios, as opposed to the actual landlords, is entitled to any damages because of its legal position (or lack of legal position)*. The issues raised in the Ross pleading about the proper measure of damages remains for determination at a later point in this case, not the current motion.

ECF 268 at 3 (emphasis added). Thus, Ross is not asking the Court at this time to determine what types of damages, if any, might be available to Markarios, which only holds the rights to an assignment of the Richmond Lease, which has expired, and related security deposits. Regarding Makarios' first and second supplemental counterclaims, the only question that Ross is presenting to the Court at this time is whether Makarios has the legal right to recover *any* damages, in light of the fact that Makarios has *never* owned the Richmond Building.

Makarios responds that it is not asserting any *tort* claims against Ross, only contract claims. Ross and Makarios are parties to a lease governed by Oregon law, and under Oregon law leases are contracts. *Harold Schnitzer Props. v. Tradewell Grp., Inc.*, 104 Or. App. 19, 23 (1990) ("Oregon treats a commercial lease as a contract and, in the absence of a provision in the lease to the contrary, ordinary contract principles apply."). Thus, if Ross materially breached a provision of the lease, it may be held liable under contract law for all damages foreseeably caused by its

PAGE 8 – OPINION AND ORDER

breach. *Continental Plants Corp. v. Measured Marketing Services, Inc.*, 274 Or. 621, 625-26 (1976); *see also Wilcher v. Amerititle, Inc.*, 212 Or. App. 498, 506 (2007) (noting that to establish damages under either a theory of breach of contract or a theory of negligence, "a plaintiff must show that his or her harm was both the factual and the foreseeable consequence of the defendant's conduct").

Essentially, Ross is arguing that returning the Richmond Building in the condition required under the lease is an obligation that only benefits the building owner. Thus, according to Ross, only the building owner may assert a claim for breach of that specific lease provision. Makarios responds that because it is a party to the Richmond Lease contract, it may sue for breach of that contract. Again, it should be recalled that Ross is only asking at this time that the Court determine whether Makarios could be entitled to recover *any* contract damages, not what would be the proper measure of those damages.

An analogy to Oregon contract law governing third-party beneficiaries may be clarifying. "Oregon law recognizes three types of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries." *Stonecrest Properties, LLC v. City of Eugene*, 280 Or. App. 550, 556-57 (2016). "Donee and creditor beneficiaries are entitled to enforce directly contractual promises intended to be for their benefit, even though they are strangers to the contract." *Id*. at 557 (quotation marks and citation omitted). "An incidental beneficiary has no right of enforcement." *Id*. As the Oregon Court of Appeals has explained:

> A person is a donee beneficiary if, under the circumstances, it appears from the terms of the contract that the purpose of the promisee in obtaining the promise is to make a gift to the beneficiary *or to confer upon him a right against the promisor*.

*Id*. (quotation marks and citations omitted) (emphasis added). The Richmond Lease requires that the building be returned in a condition described by the lease. Although the building's owner

PAGE 9 – OPINION AND ORDER

in 1956 appears to be the same entity as the original lessor at the time the Richmond Lease was entered into, the lease, and specifically the condition of return clause, appears to have been intended to confer a right in favor of whatever entity actually owned the building at the expiration of the lease, as against the promisor, *i.e*., the lessee.

Under Oregon's third-party beneficiary contract law, if a Promisor (A) makes a promise to a Promisee (B) under circumstances from which it appears that the Promisee (B) intended to confer a right in favor of a third-party (C) against the Promisor (A), then the third-party (C) may sue the Promisor (A) for breach of contract. Applying this to the pending dispute, Ross, as lessee, is the Promisor (A) under the Richmond Lease. Makarios, as lessor, is the Promisee (B) under that lease. The owner of the Richmond Building at the time of the expiration of the lease and the return of the property is a donee (or intended) third-party beneficiary (C) of the lease. This provides the third-party beneficiary (C) with the right to sue the lessee, as Promisor (A), for breach of contract (*i.e*, breach of lease). This appears to be the first part of Ross' argument under a contract analysis.[4] As far as it goes, it appears to be correct. The second part of Ross' argument, however, appears to be that because the return condition requirement in the Richmond

---

[4] Ross also argues that a party without an ownership interest in property cannot sue for damages to that property, citing *CHHMM, LLC v. Freeman Marine Equipment, Inc*., 2014 WL 6610007 (D. Or. Nov. 20, 2014). *CHHMM*, however, involved a *tort* claim for water damage to a vessel caused by a door manufactured by the defendant. The court noted that "[a] fundamental element of any negligence claim is actual loss or damage to the plaintiff caused by the defendant's action," and that "a party has no standing to recover for alleged negligent damage to property that it does not own." *CHHMM*, 2014 WL 6610007 at *3. Ross also cites *Gaetan v. Weber*, 729 A.2d 895 (D.C. 1999), for the proposition that this principle applies in the context of *tortious* damage to real property. *See Gaetan*, 729 A.2d at 898 ("[A] tenant lacks the requisite ownership interest to recover damages to real property."). As Makarios responds, however, this principle of tort law is inapplicable in this action in which Makarios seeks damages for a breach of contract, not tort. Makarios seeks to recover not for tort damages caused to the Richmond Building, but only for breach of contract (*i.e*., breach of lease) damages resulting from Ross' alleged breach of the return condition requirements in the Richmond Lease.

Lease is for the benefit of the third-party building owner and Makarios is not the building owner, then Markarios may not recover any damages for breach of that lease.

The error in this part of Ross' argument is that under ordinary principles of third-party beneficiary contract law, the Promisee (B) also is entitled to sue to the Promisor (A) for breach of contract. *See Corvallis R. Co. v. Portland Ry. Co.*, 84 Or. 524, 539-40 (1917) (en banc). This principle is explained in Section 305 of the Restatement (Second) of Contracts. That section provides:

> **§ 305  Overlapping Duties to Beneficiary and Promisee**
>
> (1) A promise in a contract creates a duty in the promisor to the promisee to perform the promise even though he also has a similar duty to an intended beneficiary.
>
> (2) Whole or partial satisfaction of the promisor's duty to the beneficiary satisfies to that extent the promisor's duty to the promisee.
>
> Comment a.  *The promisee's right*. The promisee of a promise for the benefit of a beneficiary has the same right to performance as any other promisee, whether the promise is binding because part of a bargain, because of his reliance, or because of its formal characteristics. If the promisee has no economic interest in the performance, as in many cases involving gift promises, the ordinary remedy of damages for breach of contract is an inadequate remedy, since only nominal damages can be recovered. In such cases specific performance is commonly appropriate. *See* § 307. . . .

Restatement (Second) of Contracts, § 305 and cmt. a. In addition, Section 307 of the Restatement (Second) of Contracts, provides at cmt. b, in relevant part:

> **§ 307  Remedy of Specific Performance**
>
> Comment b.  *Suit by promisee*. Even though a contract creates a duty to a beneficiary, the promisee has a right to performance. *See* § 305. The promisee cannot recover damages suffered by the beneficiary, but the promisee is a proper party to sue for specific performance if that remedy is otherwise appropriate under the rules stated in §§ 357-69. . . .

Restatement (Second) of Contracts, § 307 cmt. b.

Thus, Ross's contractual obligations under the Richmond Lease may be enforced either by the lessee (Makarios) *or* by the third-party beneficiary (collectively, Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris, as tenants-in-common). Makarios, however, cannot recover damages suffered by the beneficiary, but may recover for any damages foreseeably and proximately caused to Makarios itself. As previously discussed, Ross is not asking the Court at this time to determine the proper measure of any damages foreseeably and proximately caused to Makarios itself. It is possible that because Makarios' interest is only as an assignee of the lease (and the related security deposits), Makarios may have no economic interest in the performance of the lease after it expires. In that case, Makarios may be entitled to no more than nominal damages, but that is a matter for another day.

Further, Makarios is not seeking specific performance, so the Court need not address whether that remedy is even available now that the Richmond Building has been sold. The Court also need not consider at this time whether, and if so how, the doctrine of undue economic waste may affect this lawsuit. *See Beik v. American Plaza Co.*, 280 Or. 547, 555-56 (1977) ("The rule in Oregon is that the cost of replacement or repair is the correct measure of damage for defects in work unless that remedy generates undue economic waste."); *see also Montara Owners Ass'n v. La Noue Development, LLC*, 357 Or. 333, 346-47 (2015) (describing doctrine of economic waste); *Thomas v. Schmidt*, 58 Or. App. 343, 345-46 (1982) (refusing to award cost of repair damages because doing so would generate economic waste).

**B. Ross' Motion Against Makarios' Third Counterclaim**

Against Markarios' third supplemental counterclaim, Ross argues that because Makarios refused to accept rent payments that Ross tendered, Markarios has waived its right to collect unpaid rent through the expiration of the lease. Makarios responds that because it expressly

PAGE 12 – OPINION AND ORDER

stated that it was *not* waiving any rights, it did not make an unequivocal waiver, as required under Oregon law. Makarios also argues that because its FED eviction proceeding against Ross was still pending (and is still pending before the Oregon Court of Appeals), Makarios could not accept rent payments from Ross without jeopardizing its FED claim. Under Oregon law, "[w]aiver is the intentional relinquishment or abandonment of a known right or privilege." *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or. 235, 240 (1993). Where there is no express waiver, a waiver may be implied where by one party's conduct "the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to." *Brown v. Portland Sch. Dist. No. 1*, 291 Or. 77 at 84 (1981) (quoting *Waterway Terminals v. P.S. Lord*, 242 Or. 1, 26-27 (1965)). In order "[t]o make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." *Id*. (quoting *Waterway Terminals*, 242 Or. at 26-27). "A party's intent to waive must be manifested by clear and unequivocal action." *Bank of E. Or. v. Griffith*, 101 Or. App. 528, 534 (1990).

Makarios returned Ross' check for rent for May 2015, asserting that Ross was in breach of the lease. In doing so, Makarios expressly stated: "By return of the rent and payment of premises' expenses, Landlord does not waive its right to seek all remedies provided in the Lease and under Oregon law." ECF 261-8 at 1-4. Makarios thereafter continued to return Ross' rent payments through September, 2016, when Ross vacated the Richmond Building. None of Makarios' subsequent letters returning Ross' checks contained the same waiver. On January 6, 2017, about three months after Ross vacated the Richmond Building, Ross wrote to counsel for Makarios stating that Makarios' return of rent checks after the ruling against

Makarios in the FED action "demonstrates that [Makarios] has waived any right to collect rent for such period." ECF 261-10. Makarios did not respond to this letter. ECF 261 at 3, ¶ 11. In *Reach Cmty. Dev. v. Stanley*, 248 Or. App. 495, 497 (2012), after issuing a notice of termination, a landlord returned a partial month's rent payment to a tenant with a letter stating that the landlord would not "accept payments at this time for rent past" due. *Id.* The trial court concluded that the "parties understood that [the landlord] was reserving the right to collect rent for the period of defendant's occupancy." *Id*. (quotation marks omitted). The tenant agreed that the landlord had not waived its right to receive rent payments. On appeal, the court held that by sending the notice and declining to accept rent for several months, the landlord "intentionally and unequivocally relinquished its right to *timely* receive rent payments." *Id*. at 499 (emphasis added).[5] There was no dispute, however, that the landlord, by not accepting payments during that time, had not waived its right to receive them altogether.

Contrary to the present dispute, the parties in *Reach Community Development* agreed that the landlord had not waived its rights to collect rent later. Nevertheless, *Reach Community Development* provides some support for the conclusion that refusing rent payments after issuing a termination notice does not necessarily waive a landlord's right later to collect rent. In fact, there is no indication that the landlord in *Reach Community Development* made a statement anywhere nearly as explicit as Makarios did in this case, to the effect that Makarios expressly stated that it was *not* waiving its rights.

Ross cites no authority, and the Court has found none, that refusing the tender of rent checks automatically constitutes a waiver of the right to receive rent payment if the tenant

---

[5] As the appellate court explained, the landlord "could not logically refuse to accept timely monthly rent payments while the dispute regarding plaintiff's earlier termination notice remained unresolved without intentionally forgoing its right to insist on timely monthly rental payments during that period." *Id*. at 500.

remains in possession of the property. Although Makarios expressly stated that it was not waiving any rights only the first time that it returned Ross' rent check, and not with any subsequent returns, the Court finds no clear, unequivocal waiver on the part of Makarios. Particularly in light of Makarios' express statement to the contrary, there is no indication that Ross was misled to its prejudice "into the honest belief that such waiver was intended or consented to." *See Brown*, 291 Or. at 84. Although Makarios did not respond to Ross' letter in January 2017, three months after Ross vacated the Richmond Building, Ross provides no argument or authority that this constitutes waiver by silence, or that if it did, it would so outweigh Makarios' initial express statement of non-waiver to justify summary judgment at this stage. As such, Ross is not entitled to summary judgment on the grounds that Makarios waived its right to collect rent under the Richmond Lease.

**C. Ross' Alternative Motion to Leave to Add Additional Parties**

As previously discussed, Ross states that it first discovered in December 2017 that Makarios never owned the Richmond Building. ECF 259 at 9 of 22. Based on the statements made by Makarios both in this litigation and in the FED action, the Court finds that Ross did not act unreasonably in accepting representations by Makarios. Accordingly, Ross has not unduly delayed seeking leave to add the actual owners of the Richmond Building as of the expiration of the Richmond Lease, Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris. Makarios opposes Ross' request, arguing that Makarios, as the promisee, is the real party in interest with regard to its counterclaims for breach of lease. As discussed above, the Court agrees that Makarios may assert a claim for breach of lease and recover. Makarios, however, cannot recover damages suffered by the beneficiary, but may recover any damages foreseeably and proximately caused to Makarios. Also as discussed, a "promisee cannot recover

PAGE 15 – OPINION AND ORDER

damages suffered by the beneficiary." Here, Makarios is the promisee and Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris, are the beneficiaries.

As Ross requests, the Court will save for another day resolving what damages, if any, Makarios may recover as compared to what damages, if any, may be recovered by the beneficiaries who were the actual owners of the Richmond Building. If, however, the beneficiaries are not brought into this lawsuit, any ruling by this Court (or in this case on appeal) may not necessarily bind the beneficiaries, and they may be able to bring their own action for damages, which could result in Ross incurring a double or multiple liability. In other words, if this Court concludes that a certain item or category of damages is available to Makarios (and not available to the beneficiary), Makarios may prevail in this case and recover those damages against Ross. If the beneficiaries are not part of this lawsuit, however, they may bring their own action and obtain a different ruling on the question of what damages may be recovered by the beneficiaries (and, thus, not by Makarios). Accordingly, the beneficiaries (Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris) would appear to be persons who are required to be joined if feasible, if they claim an interest relating to the subject of the action and are so situated that disposing of this action in their absence may leave Ross "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).

It is unclear whether Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris "claim an interest relating to the subject" of this action. In opposition to Ross's alternative motion, Makarios submitted the declaration of Charles W. Calomiris (ECF 266) and a document entitled "Consent and Ratification" signed by Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris. ECF 266-1. Neither the declaration of Mr. Calomiris

nor the Consent and Ratification unambiguously disclaim an interest relating to the subject of this action. To the contrary, the declaration of Mr. Calomiris appears to express an interest relating to the subject of this action. *See* Decl. C. Calomiris, ¶ 8 (ECF 266). If Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris all unambiguously disclaim any interest in personally seeking any recovery from Ross related to the Richmond Lease or the Richmond Building, then their individual presence as defendants in this action would not be necessary. If, however, they do not timely and unambiguously disclaim any such interest, then Rule 19 would presumptively require their joinder, as Ross requests in its alternative motion.

## CONCLUSION

Ross' motion for summary judgment and alternative motion for leave to add parties (ECF 259) are GRANTED IN PART AND DENIED IN PART. Ross' motion for summary judgment against Makarios' supplemental counterclaims is DENIED. Ross' alternative motion for leave to add Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris as additional defendants is CONDITIONALLY GRANTED. Unless Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris all file with the Court not later than June 15, 2018, a written statement unambiguously, unconditionally, and irrevocably disclaiming any interest in personally seeking any recovery from Ross related to the Richmond Lease or the Richmond Building, Ross has leave to file, not sooner than June 18, 2018, a supplemental complaint adding Charles W. Calomiris, Katherine Calomiris Tompros, and Jenifer Calomiris as additional declaratory judgment defendants.

**IT IS SO ORDERED**.

DATED this 31st day of May, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge